**UNITED STATES v. GIANOULIS et al.**

**No. 10121.**

United States Court of Appeals Third Circuit.

Argued April 6, 1950.

Decided June 29, 1950.

Louise F. McCarthy, Washington, D. C. (Ed Dupree, General Counsel, Leon J. Libeu, Assistant General Counsel, Nathan Siegel, Special Litigation Attorney, Office of the Housing Expediter, Washington, D. C., on the brief), for appellant.

No oral argument for appellees.

Before BIGGS, Chief Judge and GOODRICH and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

On May 16, 1949 the United States brought this action against Peter Gianoulis and Colombe Gianoulis because of rent overcharges in violation of Section 206(a) of the Housing and Rent Act of 1947, 61 Stat. 199, as amended, 50 U.S.C.A.Appendix, § 1896 and Controlled Housing Rent Regulation, 12 F.R. 4331. The authority of the United States to bring such an action is found, it is asserted, in Sections 205 and 206 (b) of the Act as amended, see 61 Stat. 199, 50 U.S.C.A.Appendix, §§ 1895, 1896. The complaint demands, among other things, an injunction against the defendants to prevent further violation of the Act, judgment

for three times the amount of the total overcharges received from the tenants within one year from the date of the institution of the instant suit or, alternatively, if restitution to the tenants be ordered, judgment in favor of the United States for twice the amount of the overcharges.

The court below made findings of fact, fully supported by the evidence, which include the following: During the entire period here under consideration the defendants were landlords of a building in Wilmington, Delaware. On November 1, 1948 the maximum legal rent for the second floor apartment of that building was $25 per month. After December 21, 1948 and until April 30, 1949 the maximum legal rent for that apartment was $28.50 per month. From November 1, 1948 until April 30, 1949 the defendants demanded and collected from tenants $45 per month for the occupancy of the apartment. They also collected $45 more from the tenants on November 1, 1948 as a "security deposit". The total overcharges between November 1, 1948 and April 30, 1949 amounted to $151.

The defendants admitted that $45 per month was collected for the use of the apartment but asserted as a defense that the rent charged was not in violation of the regulations because the apartment was leased to the tenants under a written lease to be used as an "antique shop" and not as a dwelling. The court below found in effect that the "antique shop" provision of the lease was a mere subterfuge to escape rent regulation.

The court below entered an order granting restitution for the benefit of the tenants in the amount of $151. The court granted double damages to the United States but only for the month of April 1949. Thus the defendants were ordered to make restitution for all overcharges from November 1, 1948 through March 31, 1949 but to pay treble damages (one-third of which was to consist of restitution to the tenants) for the overcharges which were made after the date last mentioned. Thus the court below awarded treble damages for a period of one month only. 86 F.Supp. 933.

The court below refused to give judgment to the United States for overcharges prior to April 1, 1949 on the ground that until that day the Act gave to tenants only the right to sue for treble damages. The appeal at bar is only from that portion of the court's judgment which denied the United States double [1] damages under Section 205 of the Housing and Rent Act of 1947, as amended for the violations which occurred prior to the date of the amending Act, 63 Stat. 27, but within one year of the bringing of the suit at bar.[2]

The pertinent parts of Section 205 of the Housing and Rent Act of 1947 provided that any tenant who was charged rent above the legal maximum could bring an action within one year for damages. The landlord who collected the overcharge was to be liable to the tenant for damages up to three times the amount of the overcharge. No provision was made whereby the United States or the Housing Expediter could sue for treble damages. See 61 Stat. 199. Under Section 206(b), which prescribed no time limit within which suit must be brought, the Housing Expediter was authorized to sue for injunctive relief.[3] The amendments made to the Act in 1948 are not pertinent here.[4]

The amendments made to the Act in 1949 retained all portions of Sections 205 and 206(b) here pertinent but a provision was

1. "Double", not "treble", since judgment for restitution was given for the tenants. This part of the judgment, of course, consumed one-third of the amount of the judgment which could have been awarded.

2. We omit from this resume matters dealt with below which play no part in the questions raised by this appeal.

3. The order in such an action could include restitution. Porter v. Warner Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332, and Woods v. Wolfe, 3 Cir., 182 F.2d 516, decided under a corresponding section of the Emergency Price Control Act of 1942, as amended. See 56 Stat. 33, 50 U.S.C.A.Appendix, § 925(a).

4. For an outline of the provisions in respect to damages in the Rent Control Acts 1942 to date including amendments see the article by Judge Rodney, 9 F.R.D. 501.

added to Section 205 to permit the United States to bring an action for treble damages against violators of maximum rent regulations if the tenant should fail to bring such an action within thirty days. It was provided that a suit by the United States would bar a suit by the tenant. The suit, whether brought by the United States or by the tenant, had to be instituted within one year of the violation.[5] These amendments became effective on April 1, 1949.

The United States contends that the amendments authorized it to maintain a suit for treble damages on account of violations which occurred prior to April 1, 1949 provided they were within the one year limitation period prescribed by the statute. We are of the opinion that the contention of the United States is sound and that therefore the judgment of the court below must be reversed as sought by the United States. Although we can find no reported decisions on this point by any court of appeals, district courts, both within and without this Circuit, have had frequent occasion to rule on the point. These decisions, however, are in sharp conflict. Some of them are set out in the footnote.[6]

It should be observed that no question arises under the *ex post facto* provisions of the Constitution, Article 1, Section 9, Clause 3. See Porter v. Senderowitz, 3 Cir., 158 F.2d 435, 440, certiorari denied 330 U.S. 848, 67 S.Ct. 1091, 91 L.Ed. 603. The damages provided for by the Act as amended do not constitute criminal sanctions and Congress possessed the constitutional right to give retroactive effect to the statute if it saw fit to do so. Our problem consists of determining the intention of Congress.

Section 205, both before and after the pertinent 1949 amendment, created and authorized only one action. Prior to the amendment the tenant had a right of action to recover damages in treble the amount of overcharge. After the amendment the landlord receiving the overcharge was liable to the tenant or to the United States. He was not liable to both. The amendment created no new cause of action albeit it provided the machinery whereby, a new plaintiff, the United States, could assert the same cause of action and collect the same damages from the landlord when the tenant, within the time specified, had failed to take steps to enforce the landlord's liability. The amendment improved the legal techniques for enforcing an existing statutory remedy. Enlargement of means of enforcement had

5. Section 205 of the amended Act, 63 Stat. 27, 50 U.S.C.A.Appendix, § 1895, now provides in pertinent part: "Any person who demands, accepts, or receives payment of rent in excess of the maximum rent prescribed under section 204 shall be liable to the person from whom he demands, accepts, or receives such payment (or shall be liable to the United States as hereinafter provided), for reasonable attorney's fees and costs as determined by the court, plus liquidated damages in the amount of (1) $50, or (2) three times the amount by which the payment or payments demanded, accepted, or received exceed the maximum rent which could lawfully be demanded, accepted, or received, whichever in either case may be the greater amount: *Provided*, That the amount of such liquidated damages shall be the amount of the overcharge or overcharges if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. Suit to recover such amount may be brought in any Federal, State, or territorial court of competent jurisdiction within one year after the date of such violation: *Provided*, That if the person from whom such payment is demanded, accepted, or received either fails to institute an action under this section within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the United States may institute such action within such one-year period. If such action is instituted, the person from whom such payment is demanded, accepted, or received shall thereafter be barred from bringing an action for the same violation or violations."

6. Decisions in favor of retroactive effect: United States v. Fullerton, D.C.D.Mass., 87 F.Supp. 359; United States v. Mitchell, D.C.W.D.Mo., 86 F.Supp. 453, and United States v. Resch, D.C.W.D.Ky., 85 F.Supp. 389.

Two reported decisions to the contrary are United States v. Mashburn, D.C.W.D. Ark., 85 F.Supp. 968 and United States v. Bize, D.C.D.Neb., 86 F.Supp. 939.

been found necessary because, although tenants had the right to bring suits for treble damages where rents had exceeded the legal maximum, they had come to fear evictions by the owners and landlords by way of reprisal.[7]  Congress made changes in the existing law which were primarily procedural in character and necessary to effect prompt enforcement.  The remedy was left unchanged and the amendment served to add a kind of "use" plaintiff who could bring suits, causes of action having accrued, when the tenants failed to do so.

We think it was the intent of Congress to cause the 1949 amendment, here under discussion, to have retroactive effect.  This is demonstrated both by the form in which the amendment was passed and the circumstances under which it was enacted as demonstrated by the legislative history.

That portion of the judgment of the court below which denied the United States damages under Section 205, except for the month of April 1949, will be vacated.  The cause will be remanded with the direction to the court below to give judgment to the United States for damages to the extent indicated in this opinion.

## UNGER v. GREENHUT.
### No. 237, Docket 21668.

United States Court of Appeals
Second Circuit.

Argued June 6, 1950.

Decided July 5, 1950.

---

**7.**  See p. 2333, Cong.Rec. 81st Cong., March 10, 1949.  See also p. 320 hearings before the House Committee on Banking and Currency Control relative to 1949 extension of rent control, 81st Cong.  See also Senate Rept. 127, to accompany H. R. 1731 (the Housing and Rent Act of 1949) 81st Cong.1st Sess. U.S.Code Cong. Serv. for above Session at p. 1149, which states in respect to the amendment: "Under existing law the tenant may sue for treble damages for rent overcharges in excess of the maximum rent, within 1 year after the date of such violation.

382

---

Isidor Unger, New York City, for appellant.

Charles L. Kahn, New York City, for appellee.

Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.

---

This provision has not proven effective in securing compliance with the law. For various reasons tenants are reluctant to report violations or to pursue their remedies under the law. Accordingly the committee has included a provision that if the tenant fails to institute such action within 30 days, the United States may institute the action and thereafter the tenant would be barred from bringing an action for the same violation. This provision should be a deterrent to any black market in overceiling rents."