### UNITED STATES v. LESNIEWSKI.
No. 280, Docket 22707.

United States Court of Appeals
Second Circuit.

Argued June 2, 1953.

Decided June 30, 1953.

---

Nathan Siegel, Sol., Office of Rent Stabilization, Washington, D. C. (Robert A. Sauer, Acting Gen. Counsel, and A. M. Edwards, Asst. Gen. Counsel, Office of Rent Stabilization, Washington, D. C., on the brief), for plaintiff-appellant.

Martin F. Stempien, New Britain, Conn., for defendant-appellee.

Before SWAN, Chief Judge, and CLARK and FRANK, Circuit Judges.

CLARK, Circuit Judge.

[1] By this appeal the United States of America seeks a modification, small in amount, but of potential importance in rent control, of a judgment it has obtained in the district court against an overcharging landlord. Under the district judge's findings of fact, which are not in dispute here, the overcharge of rent for an apartment in New Haven, Connecticut, made by defendant between April 1, 1949, and October 31, 1951 (when the rent was validly increased), was $497; of this, the amount

accruing within the year before the commencement of the Government's suit was $106. The district court concluded on the evidence that, while defendant's violation was not willful, it was "the result of failure to take practicable precautions" against its occurrence since made without attempt to ascertain the law, and hence defendant could not avail himself of the Chandler defense, so-called, limiting all damages to the amount of the overcharge. Housing and Rent Act of 1947, as amended, § 205 (a), 50 U.S.C.Appendix, § 1895(a), superseding Emergency Price Control Act of 1942, as amended, § 205(e), 50 U.S.C.Appendix, § 925(e). But the court also concluded that the defendant's negligence was self-neutralizing; his failure to acquaint himself with the law had led to his not seeking an increase in the rent, which would have been allowable to an over-all amount substantially as large as the overcharges. While this was irrelevant as a legal defense, it did affect the exercise of judicial discretion, making the case in substance one for restitution, rather than for a penalty. The judge felt himself bound under the statute just cited to award the United States as a minimum the amount of the overcharge for one year, namely, $106; but he then went on to give judgment for the total amount of overcharge, $497, to be disbursed by the plaintiff to the tenant (the latter being found and willing to accept) and provided that "the payment by defendant of said Four Hundred and Ninety-seven ($497) Dollars shall satisfy the award of damages" first made. It is this last provision which the Government attacks and seeks to have stricken here.

The Government asserts that under the law the award of $106 is mandatory and no discretion is permitted the judge to pass its benefits on to the tenant. This raises a question purely of law. Had Judge Hincks the power, we do not think the exercise of his discretion could be properly attacked. Here he has held that a novice at the renting of real estate has penalized himself by his ignorance of the law, and that refund to the tenant, who gets this

substantial benefit, is all that the law should demand. We turn therefore to the statutes.

The legislative ups and downs of price control, particularly as applied to rents, have not given us exactly clear-cut provisions with which to deal. From the beginning in 1942 the statutes above cited have provided a penalty for charges above legal ceiling prices. Before the 1947 amendments and after the 1951 amendments the award might be such an amount not more than three times the overcharge (and now at least $50), as the court in its discretion might determine; during the period 1947–1951 it had to be treble the overcharge. Until the 1944 amendment and again from the 1947 to the 1949 amendments the tenant alone could sue, within a year; from 1944 to 1947 and since 1949, if the person overcharged did not sue within thirty days after the violation, the United States could sue at any time within a year. These statutory variations are described in many cases, e. g., Mattox v. United States, 9 Cir., 187 F.2d 406; United States v. Gianoulis, 3 Cir., 183 F.2d 378, 381, note 7; United States v. Richards, D.C.M.D.Pa., 102 F. Supp. 302; and the opinion below.

■ An action for restitution of the overcharge is not in terms authorized in any of these successive Acts. But in the leading case of Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332, the Court held—against sharp dissent—that under the statutory provision prohibiting the overcharge and authorizing an injunction against it, § 205(a) of the earlier Act, 50 U.S.C.Appendix, § 925(a), now § 206(b) of the later Act, 50 U.S. C.Appendix, § 1896(b), an order for the recovery and restitution of illegal rents may be considered a proper "other order" under the statute either as an equitable adjunct to an injunction decree or as an order appropriate and necessary to enforce compliance with the Act. And this position has been reiterated, if not extended, against the dissent of four justices in United States v. Moore, 340 U.S. 616, 71 S.Ct. 524, 95 L.Ed. 582, upholding a district court's award—which had been overturned in the court of appeals—of restitu-

tion, as well as the statutory damages, in a case where no injunction was possible because the defense-rental area had now been decontrolled. It is therefore taken as settled law that the district court may in the exercise of discretion award restitution of the overcharges in addition to the statutory damages and in the same action, United States v. Ziomek, 8 Cir., 191 F.2d 818; United States v. Carter, 10 Cir., 197 F.2d 903; Woods v. Witzke, 6 Cir., 174 F.2d 855, and that this award is not limited to the one-year overcharge as is the damage award. United States v. Pileggi, 2 Cir., 192 F.2d 878; Mahanor v. United States, 1 Cir., 192 F.2d 873; Moore v. United States, 5 Cir., 196 F.2d 906.

Against this background the Government argues very strongly that the two remedies are entirely distinct and that the minimum award of the action "at law" must be kept entirely separate—and for governmental coffers alone—from the equitable remedy of restitution. But this, it seems to us, is to compartmentalize the law in ways not specified in the governing statutes or decisions and to a certain extent inconsistent with what has necessarily been held in other situations. Although no express provisions so state, the direction for payment to the tenant by way of restitution of money collected by the Government appears usual and is not challenged here; and while the Government originally claimed either treble damages for a year or, in the event restitution was ordered, double damages for a year as additional penalty, it appears to recognize, as it must, the right of the district court to limit the amount of total award against the landlord to single recovery of the overcharge just as was done. The narrow scope of the issue is whether the judge lacks power to direct the Government to pay over to the tenant the amount of the last year's overcharge which it recovered as damages. The question remains the same, of course, if we must employ labels to say that the judge has limited restitution to $391 and awarded damages of $106. For who is to get the damage award?

Here the Government betrays some inconsistency itself in limiting its demands—

a policy "always taken," as it says—to double damages where restitution is being ordered. Judge Magruder for his court has argued cogently that Congress, in stating the limits of statutory damages, has intended to limit all recovery, even in a willful case, to treble the overcharge. Cobleigh v. Woods, 1 Cir., 172 F.2d 167, certiorari denied 337 U.S. 924, 69 S.Ct. 1168, 93 L.Ed. 1732. But since this is a limitation not expressly made in the statute, other courts have declined to apply it. McKittrick v. United States, 9 Cir., 197 F.2d 787; Moore v. United States, 5 Cir., 196 F.2d 906; United States v. Ziomek, 8 Cir., 191 F.2d 818. In any event, the concession by the Government goes far to undermine its argument of the complete distinction between the two remedies. Other courts have ruled that an award of treble damages may be cut down by the amount of restitution. Mattox v. United States, 9 Cir., 187 F.2d 406; McKittrick v. United States, 9 Cir., 197 F.2d 787; Woods v. Witzke, 6 Cir., 174 F.2d 855; Miller v. United States, 5 Cir., 186 F.2d 937; Moore v. United States, 5 Cir., 196 F.2d 906. It is true that one case, by footnote dictum, suggests that this should not be done where the damages are limited to the minimum single overcharge. Mattox v. United States, supra, 187 F.2d at page 408, note 2, cited also in McKittrick v. United States, 9 Cir., 197 F.2d 787. This is literally the only positive prohibition we have seen; the remainder, we suggest, are affirmations of extensive awards split between Government and tenant which do not, except by remote implication at best, suggest that a minimum award must remain in the United States Treasury and not go to the overcharged tenant.

On the other side, restitution was granted without statutory damages in United States v. Leslie Apartments, D.C.E.D.N.Y., 96 F.Supp. 355, and the Government did not appeal, the award being affirmed against the landlord in 2 Cir., 187 F.2d 1023. And directly in point is the decision in Orenstein v. United States, 1 Cir., 191 F.2d 184, 192, again by Judge Magruder, whose familiarity with price control through service on the Emergency Court of Appeals is well known. Judge Magruder was dealing with a case during the period when the law permitted the Government to insist that the court render judgment for treble damages against a willful or negligent violator; "however, if the court does so, it will no longer be an appropriate exercise of equitable jurisdiction to issue an order for restitution to the tenant under § 206(b) of the Housing and Rent Act. We say this, because an order for restitution and the recovery by the United States of treble damages by way of penalty are both in vindication of the public interest, where the tenant fails to pursue his private remedy; and there is no indication that Congress ever contemplated that the maximum liability of even a willful violator should be in excess of three times the amount of the overcharges." Nonetheless, the court of appeals affirmed a judgment which ordered disbursement by the Treasurer of the United States to the two overcharged tenants of all the refund collected, with no award of damages to the United States under § 205 of the Act, not even single damages, let alone treble damages.

The Government seeks to distinguish that case because of its prayer for damages, to which Judge Magruder does allude, wherein it had asked for treble the overcharges collected by the defendant within one year " 'or, in the event that restitution to said tenant be ordered, that judgment for damages recovered by the plaintiff be reduced by the amount of such restitution.' " 191 F.2d at page 192. But we think such distinction unavailing for several reasons. Of course the demand for judgment does not control the proper relief to be awarded, Fed.Rules Civ.Proc. rule 54(c); Conto v. United Fruit Co., 2 Cir., 203 F.2d 456, 457, and we refer to it here only for the light it may shed on the Government's intent. So viewed, it is not different from the demand and intent in the present case, reflecting the policy above cited of reducing treble damages by the amount of restitution ordered for the year. If we pass the inconsistency of position noted above, it shows no greater liking on the part of the Government for the Orenstein result than the result here.

But we think there is a yet deeper objection to the attempted distinction: nowhere in the Acts is such discretion to grant or withhold mercy to a willful or negligent violator committed to the power of the Government officials. Whatever discretion is granted by the statutes is committed to the courts, and there it should remain. Consent or prayer by the Government should be a matter for the court to consider, but should not control. Indeed, the Government's argument here seems also somewhat self-defeating. If the court lacks discretion and the amount of the statutory damage is absolutely due the Treasurer of the United States, what power do the price control officials have to consent to payments at variance with what they conceive to be the statutory command?

Nor does the history of the legislation bear out the rather extreme claim of the Government. As we have seen, courts, including the Supreme Court, have had to work out an operable system of law enforcement employing the equitable principles of restitution in the historic discretion of the chancellor. In the many revisions of the Acts, no reaction against this construction has been noted, or limitation on judicial power suggested. The legislative history in fact points the other way. For a time, e. g., 1947–1949, the tenant, as we have seen, alone could collect the statutory damage. The change in 1949 was not made to bring in some meager accruals to the United States Treasury. It was made because the "provision has not proven effective in securing compliance with the law. For various reasons tenants are reluctant to report violations or to pursue their remedies under the law. Accordingly the committee has included a provision that if the tenant fails to institute such action within 30 days, the United States may institute the action and thereafter the tenant would be barred from bringing an action for the same violation. This provision should be a deterrent to any black market in overceiling rents." Sen.Rep. No. 127, 81st Cong., 1st Sess., 2 U.S. Code Cong.Serv.1949, pp. 1149, 1150. See this statement quoted with other congressional references in United States v. Gianoulis, 3 Cir., 183 F.2d 378, 381, note 7.

The statutory plan therefore seems to us tolerably clear. To stamp out black marketeering, the wrongdoer must face at least a minimum award against him. But Congress has not expressly tied the hands of the court as to disposition of the refunds demanded; on the contrary, it has gone far to uphold the wise discretion of the courts. We think Judge Hincks was correct in holding that such discretion included also the narrow point at issue here.

Affirmed.