JUAN T. PEÑAGARÍCANO, Economic Stabilization Administrator of Puerto Rico, Petitioner *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, M. ALMODÓVAR ACEVEDO, Judge, Respondent; HARRY NADAL SKERRET, Intervener.

No. 2,429. Submitted October 1, 1959.—Decided June 15, 1960.

*Juan T. Peñagarícano, pro se* and *Víctor M. Marchán, Abraham Freyre* and *Nieves Agostini de Torres* for petitioner. *Jorge Benítez Gautier* for intervener.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

On December 1, 1954 Francisco Taime, a tenant, occupied an apartment house located in building No. 84 of Ponce de León Avenue in Hato Rey, owned by the intervener Harry Nadal Skerret. He was charged a monthly rental of $75.00. The rent that was being paid on this dwelling on October 1, 1942, according to the federal Office of Price Administration (O.P.A.) was $45 a month. In April and June 1956 Taime went to the Economic Stabilization Administration alleging that the rent was excessive. The Administration believed that it was an apparent case of overcharge in the light of the record of the dwelling and commenced an investigation. On January 14, 1957 the landlord applied for an increase of the maximum rent on the ground, among others, that it had no relation to the rent prevailing for similar dwellings or sites on October 1, 1942 and that said rent of $45 was also materially affected at that time by family relations between the landlord and the former tenant who was his sister. After the proper proceedings the Administrator concluded that the $75 rent was substantially higher than the rent prevailing on October 1, 1942 for comparable dwellings

or sites and on October 21, 1957 he fixed a reasonable rent of $57.70 per month based on the comparable rent prevailing at that time, effective as of November 1, 1957. On October 28 the Administrator informed Taime that he had fixed said maximum rent of $57.70 retroactive to December 1, 1954 in order for the latter to ask the landlord for restitution of the excess payments. On November 8, 1957 he formally notified the parties of an order of reimbursement to the tenant in the amount of $588.20, total sum of an overcharge of $17.30 collected monthly during 34 months.

On September 2, 1955 José Luis Cebollero occupied another dwelling in the same building paying a monthly rent of $75. The rent that was being paid on October 1, 1942 was $40 a month according to the records of the Office of Price Administration. On April 13, 1956, Cebollero requested review of the rent on the ground that it was unreasonable. On January 14, 1957 the landlord requested, on grounds similar to those of the foregoing case, an increase of the maximum rent of $40. The Administrator made a like determination as in the Taime case, as to the comparable rent prevailing for similar dwellings in 1942, and on October 21, 1957 he fixed a maximum rent of $57.70 effective as of November 1, 1957. On November 18, 1957 he entered an order of reimbursement on behalf of Cebollero for the amount of $328.70 based on an overcharge of $17.30 collected monthly during 19 months.

Feeling aggrieved, the landlord resorted to the San Juan Part of the Superior Court on a petition for review of said orders, Civil Cases Nos. 57–6443 and 57–6576, and alleged in both appeals that the Administrator had fixed the rent of $57.70 prospectively as of November 1, 1957 and without a previous temporary order or notice of any kind whatever to the effect that said reduction would be applied retroactively, he ordered reimbursement of the overcharge for 34 monthly instalments in one case and 19 in the other; that there was no legal basis to decree such reimbursements

because (1) if they had been ordered on account of the reduction of $17.30 in the monthly rent the reduction was decreed prospectively and (2) if the reimbursement was ordered on the basis of a lower rent in the basic period, said orders whose effect was to revive actions would not lie either.

The Superior Court rendered judgments modifying the orders for reimbursement and limited their retroactivity to only one year prior to the date of the orders, that is, to November 9, 1956 in case No. 57–6443 and to November 18, 1956 in case No. 57–6576. At the request of the Administrator, who alleges in this Court that the trial court committed error (1) in determining that orders for reimbursement must have only one year of retroactivity from the date of their effectiveness and (2) in treating the orders of simple reimbursement the same as the triple reimbursement arising from action for treble damages, and that the question presents a problem in the administration of the Reasonable Rents Act that we have not decided, we issued this certiorari.

## I

 Section 6 of the Reasonable Rents Act—Act No. 464 of April 25, 1946 (Sess. Laws, p. 1326), 17 L.P.R.A. § 186 *et seq.*—prohibited, except as provided in the Act itself, the collection of any rent higher than that paid on October 1, 1942, and which was considered the *"basic rent."* The Administrator was authorized to fix the *reasonable rent* taking into account the factors and other circumstances provided in said § 6. Notwithstanding any contract, pact or agreement, no owner may collect or receive a rent higher than the *basic* rent or *reasonable* rent fixed by the Administrator. In the cases where the Administrator adjusts the rent which was being paid prior to the effectiveness of the Act or enters a final order on any rent fixing instead the reasonable rent as determined in the Act, the tenant is only required to pay the *basic* rent or the *reasonable* rent fixed for that purpose, but is not entitled to reimbursement or

claim for the amount paid in excess of the reasonable rent prior to the date on which the latter was fixed, except in those cases where by express statutory provision the rent automatically adjusts to the sum prevailing on October 1, 1942, and except in such cases where the Administrator has entered a temporary order increasing or fixing the maximum rent until the case is finally decided, but the rent so increased or fixed is subject to reimbursement to the tenant as to that amount in excess of the maximum rent fixed in the final order.

When these tenants occupied the dwellings in 1954 and 1955, the landlord was forbidden to charge a rent in excess of that paid on October 1, 1942, which was the maximum rent fixed by the Act. (Section 6, paragraphs 1 and 12.) The reasonable rent of $57.70 determined by the Administrator was effective as of November 1, 1957 without a temporary order being entered in the course of the proceedings increasing the maximum rent until the case was finally decided. Therefore up to November 1, 1957 and during the whole previous period when the tenants occupied the premises the illegal rent of $75 charged was automatically readjusted to the rent paid in October, 1942. In that case the tenant is entitled to reimbursement or claim for the payment made in excess of the *basic* rent, as revealed by paragraph 8 of § 6. It appears from the original records, however, that at the landlord's request the Administrator modified the *basic* rent of $45 and $40 paid in 1942, increasing it to $57.70 on the basis of a comparable rent at that time for similar dwellings. To this respect, paragraph 9 of § 6 provides that if because of relationship or other personal or special relations between the landlord and the tenant or due to peculiar circumstances, the rent accrued on October 1, 1942 was substantially lower than the rent accrued in Puerto Rico for similar dwellings or buildings on that same date, the Administrator shall, on application of the

landlord, fix the reasonable rent in accordance with the standards established in the Act. The foregoing provision authorizes the Administrator to fix a reasonable rent higher than the *basic* rent taking into account the rent paid by similar dwellings in 1942. But pursuant to the standards of Act No. 464, the *basic* rent governs and is effective as long as the Administrator does not change it, and every final determination of a reasonable rent has prospective effect as of the date of the determination insofar as the tenant's obligation to pay the reasonable rent so determined is concerned; unless the latter had already been fixed temporarily in the course of the proceedings, in which case the tenant is required to pay it as of the temporary order.

The Administrator provided that as of November 1, 1957 the reasonable rent to be paid was $57.70 which he fixed instead of the $75 collected up to that time. But upon decreeing the reimbursement to which the tenants were entitled by law he gave to his order fixing a *reasonable* rent, —based on a comparable rent in 1942, —retroactive effect to the freezing period. In other words, the Administrator fixed a reasonable rent higher than the *basic* rent but lower than that which was being paid, *nunc pro tunc* at the time when in violation of the Act a rent higher than the *basic* rent was charged, thus seeking to validate in part the excess charged on the *basic* rent before the latter was modified. He thus deprived the tenants of the right to a higher reimbursement each month of all the excess on the frozen rent. Neither paragraph 9 of § 6 to which we referred, nor any other provision of the Act authorizes this action on the part of the Administrator, who lacks power to substitute retroactively another reasonable rent for the stabilized rent. Insofar as the reimbursements were limited to the excess paid each month between the rent of $57.70 and that of $75 which was collected, the administrative orders were erroneous. In

this appeal we are precluded from modifying them in this respect because the injured tenants did not request their review before the Superior Court.[1]

■ Let us turn then to the question concerning the retroactive effect of the orders granting reimbursement. In the face of the landlord's attack denying the Administrator authority to enter orders of reimbursement in this case because a temporary rent pending the proceedings was not fixed, the lower court upheld said authority—which was correct in the circumstances of this case which involved an automatic adjustment—but modified the orders limiting the retroactivity of reimbursements to the overcharges paid not more than one year prior to the dates of the orders entered to such effect.[2] The Court believed that it was not proper to enter an administrative order of reimbursement covering overcharges paid during a period in which, pursuant to the provisions of § 8(h) of the Act—17 L.P.R.A. § 188(h)— the action for triple damages already prescribed;[3] and that the orders for reimbursement entered would tend to administratively extend the period of limitation granted by the Act for the filing of the action and would be tantamount to determining that the tenant may file an action for triple damages for the total amount of the overcharges collected. In its conclusions the trial court does not distinguish between the extrajudicial or administrative *reimbursement* of improper collections and the judicial claim of statutory dam-

---

[1] It appears from the administrative record that on October 11, 1957 Cebollero told the Administrator that he was not interested in the rent to be fixed in the future since he had vacated the premises as of March 10, and insisted that he was entitled to a reimbursement of $35 per month based on the *basic* rent and not of $17.30 based on the reasonable rent fixed. The Administrator did not agree to the request and this tenant did not seek review before the Superior Court either.

[2] The landlord has not requested review in this Court, so the only point at issue is the retroactive effect of said orders.

[3] It provides that the actions for triple damages shall be filed only within the year following the date on which the overcharge was paid or the date on which the Administrator orders a reduction in the rent, including reimbursement to the tenant, as the case may be.

ages with its period of limitation. Although it does not cite from any of our authorities or from other courts in support of its conclusions, everything indicates that it approached the problem on the basis of the right given to the tenant under the federal acts of price and rent control prevailing here until July 31, 1953. Let us examine, then, by way of illustration, the immediate antecedents of the question involved as the problem developed in the light of said federal legislation.[4]

Section 205 (a) of the Federal Housing and Rent Act of 1947, as subsequently amended, —50 U.S.C.A., App. § 1895, 61 Stat. 199, —provided that any person who demanded, accepted, received or retained any payment of rent in excess of the maximum rent prescribed by the Act or any regulation, order or requirements thereunder, would be *liable* to the person from whom such payment was demanded, accepted, received or retained (or would be liable to the United States as hereinafter provided) for reasonable attorney's fees and costs as determined by the court, *plus liquidated* damages in the amount of (*a*) $50 or (*b*) *not more* than three times the amount by which the payment or payments demanded, accepted, received or retained exceeded the maximum rent which could lawfully be demanded, accepted, received or retained, as the court in its discretion would determine, whichever in either case (*a*) or (*b*) was the greater amount. As originally approved in 1947, this section authorized the person who had been overcharged to institute a judicial action in any federal or state court of competent jurisdiction to obtain *liquidated damages* in the manner expressed, which action had to be filed within one year after the violation by the landlord and collection of the overcharge. By subsequent amendments the United States was also authorized to settle the claim or to institute the action in its behalf, within one

---

[4] See: Housing and Rent Acts (1947 Act as amended) 50 U.S.C.A., App. § § 1891 *et seq.;* 61 Stat. 196; Emergency Price Control Act of 1942, 50 U.S.C.A., App. § § 901 *et seq.;* 56 Stat. 23.

year of the violation if the injured person did not file the suit within 30 days from the violation, or was not entitled for any reason to institute it. In such case the aggrieved tenant was barred from bringing an action for the same violations.

It is advisable to anticipate that different from the provisions in § 8(a) and (b) of our Act, the federal statutes contained no provision whatever on *restitution*, or reimbursement of excessive charges, aside from the said judicial action for liquidated damages. However, the problem as to the right of restitution of overcharges, unlike liquidated damages, did not take long to arise, although it met a disparity of views between two courts of appeal. *Cf. Bowles* v. *Warner Holding Co.*, (C. A. 8) 1945, 151 F.2d 529 and *Bowles* v. *Skaggs*, (C. A. 6) 1945, 151 F.2d 817. The Supreme Court in *Porter* v. *Warner Holding Co.*, 328 U.S. 395 (1946), established the pertinent doctrine. In this case the federal Administrator acting pursuant to the provisions in § 205(a) of the Emergency Price Control Act of 1942, —56 Stat. 33, substantially equal to § 206(b) of the 1947 Act, 50 U.S.C.A., App. § 1896(b), —filed an action of injunction to restrain the landlord from continuing to charge rents in excess of the maximum established. Said section provided that whenever in the judgment of the Administrator any person was engaged or was about to engage in any acts or practices in violation of the Act, he could apply to a court for an order enjoining such acts or practices, *or an order enforcing compliance with such provision*, and upon a showing by the Administrator that such person had engaged or was about to engage in any such acts or practices, a permanent or temporary injunction, restraining order *or other order* would be granted without bond. The Administrator amended the complaint subsequently, seeking, in addition to the injunction, a court order requiring a refund to the injured tenants of all excessive charges, except to those tenants who had already commenced an action under § 205(e) of the 1942

Act for liquidated damages for $50 or three times the over-charge. The District Court granted the injunction but, like the Court of Appeals, it declined restitution on the ground that it lacked statutory jurisdiction and power to grant it. The Supreme Court decided that once the equity jurisdiction of the District Court was invoked for requesting an injunction under § 205(a), the court had jurisdiction and power to decree restitution of the excessive charges, stating that it was clear that a decree compelling one to *disgorge* profits, rents or property acquired in violation of the Emergency Price Control Act could properly be entered by the court under the jurisdiction granted thereto by § 205(a) to decree an injunction, restraining order *or other order;* and that an *order for restitution* could be that *"other order"* first, as an equitable adjunct to an injunction decree, and second, as an order appropriate and necessary to enforce compliance with the Act and the statutory public policy. The Supreme Court said that a restitution order could be appropriate to assure future compliance with the Act more definitely if one is com-pelled to restore illegal gains. Comparing then the mere *restitution* of the excess payments with the statutory action for *damages*, the Supreme Court stated (328 U.S. at 402):

"Restitution, which lies within that equitable jurisdiction, is consistent with and differs greatly from the damages and penalties which may be awarded under § 205(e).* [Citation.] When the Administrator seeks *restitution* . . . he does not request the court to award *statutory damages* to the purchaser or tenant or to pay to such person part of the penalties which go to the United States Treasury in a suit by the Administrator under § 205(e). Rather he asks the court *to act in the public interest by restoring the status quo* and ordering the return of that which rightfully belongs to the purchaser or tenant." (Italics ours.)

The *Porter* decision was ratified and elaborated in a cer-tain way in *United States* v. *Moore*, 340 U.S. 616 (1951).

---

* It corresponds to § 205(a) of the 1947 Act as amended.

In this second case the Administrator sought in the same action an injunction, statutory damages and *restitution* of overcharges to the tenant, invoking § § 205(a) and 206(b) of the 1947 Act, *supra*. The District Court allowed liquidated or statutory damages for $50, and ordered restitution of all overcharges to the tenant. The Court of Appeals reversed, holding that the Administrator had a right of action solely for statutory liquidated damages and ordered the dismissal of the case insofar as the injunction and restitution were concerned. It was accepted later that the injunction was not issuable because rent control in that area had terminated pending the case. The Court of Appeals believed that since an injunction was not appropriate and restitution was adjunctive thereto, the latter was not appropriate either. Reaffirming the decision in *Porter, supra*, and elaborating the doctrine further, the Supreme Court held that the order for restitution could be entered by the District Court as a court of equity even when injunctive relief was not sought or was not appropriate, as an *order*, under § 206(b) (1947) to enforce compliance with the Act for the period in which the landlord demanded and received excessive rentals.

From and after the *Porter* and *Moore* decisions it was firmly established that in addition to the action for statutory damages on behalf of the United States, the Administrator could seek and obtain for the injured parties, under § § 205(a) of the 1942 Act and its equivalent 206(b) of the 1947 Act, restitution of overcharges as a means of enforcing the Act and the congressional policy; that both actions could be joined in a single proceeding; that restitution was appropriate even where rent control had already terminated and an injunction could not be sought; that simple restitution of the amount collected during the period covered also by the statutory action for liquidated damages was appropriate, and finally, that the one-year limitation provision fixed for the action of liquidated damages did not control the Administrator's right to recover excess. The

following cases illustrate the foregoing views: Camuñas *v. United States*, (C.A. 1) 212 F.2d 540; *United States* v. *Owens*, (C.A. 6) 207 F.2d 725; *United States* v. *Lesniewski*, (C.A. 2) 205 F.2d 802; *United States* v. *Carter*, (C.A. 10) 197 F.2d 903; *United States* v. *Ziomek*, (C.A. 8) 191 F.2d 818; *United States* v. *Pileggi*, (C.A. 2) 192 F.2d 878; *Mahanor* v. *United States*, (C.A. 1) 192 F.2d 873; *Orenstein* v. *United States*, (C.A. 1) 191 F.2d 184; *United States* v. *Simons*, (C.A. 10) 190 F.2d 167; *United States* v. *Fogaley*, (C.A. 10) 190 F.2d 163; *Woods* v. *Richman*, (C.A. 9) 174 F.2d 614; *Co-Efficient Foundation* v. *Woods*, (C.A. 5) 171 F.2d 691; *Woods* v. *Wayne*, (C.A. 4) 177 F.2d 559; *Ebeling* v. *Woods*, (C.A. 8) 175 F.2d 242; *Woods* v. *McCord*, (C.A. 9) 175 F.2d 919; *Woods* v. *Witzke*, (C.A. 6) 174 F.2d 855; *Blood* v. *Fleming*, (C.A. 10) 161 F.2d 292; *Bowles* v. *Skaggs*, (C.A. 6) 151 F.2d 817; *Matheny* v. *Porter*, (C.A. 10) 158 F.2d 478; *Warner Holding Co.* v. *Creedon*, (C.A. 8) 166 F.2d 119; *Woods* v. *Wolfe*, (C.A. 3) 182 F.2d 516; *Smith* v. *Woods*, (C.A. 5) 178 F.2d 467. In *United States* v. *Fogaley, supra*, the District Court ordered restitution, but expressly limited it to the period not barred for the action for liquidated damages or treble damages, as the Superior Court believed in this case. The Court of Appeals reversed, holding that said requirement was not applicable to restitution. In *United States* v. *Lesniewski, supra*, Judge Clark stated: (p. 804) "It is therefore taken as settled law that the district court may in the exercise of discretion award restitution of the overcharges in addition to the statutory damages [liquidated] and in the same action, [citations], and that this award is not limited to the one-year overcharge as is the damage award. [Citations.]"

Such was the jurisprudential situation concerning actions instituted by the Administrator acting either pursuant to the sections referring to statutory damages (205 (e) of 1942

and 205(e) of 1947); or to those referring to injunction or other orders of equitable jurisdiction (205(a) of 1942 and 206(b) of 1947); or under both sections jointly, where, as we have seen, restitution was granted as a means of enforcing the congressional policy on prices and inflation. Those cases, it is plain, did not involve an action brought directly by the injured tenant to obtain restitution of the overcharge. We already noted that none of the federal statutes granted to the tenant specifically and directly the right to recover the excessive charges but instead gave him the right to obtain attorney's fees, the costs of the proceeding, and $50 or not more than three times the overcharge, whichever was greater, limiting this right to be exercised within one year of the violation.

As to actions filed directly by the tenant and not by the Administrator, the decisions, which are fewer, have sustained in their majority different views. In *Meyercheck* v. *Givens*, (C.A. 7) 180 F.2d 221, the action was brought by several tenants under § 205 of the 1947 Federal Act. The District Court concluded that there was a willful violation and granted damages for one and one-half times the overcharges collected for the year immediately preceding the suit, but as to several tenants it granted also the sum of the overcharges during the period prior to said year. Reversing, the Court of Appeals held that according to the statute a tenant did not have a right of action on this last ground, not even under the theory of improper collection or retention; that his sole action was that of statutory damages limited to the said year, and that as to those other overcharges prior to that year the Act provided no remedy whatever. This decision has been followed by several state courts applying the Federal Act in actions brought by a tenant. *Cf. Huff* v. *Pruance*, 116 N.E.2d 470 (Ohio);

*Thomsen* v. *Mill*, 248 S.W.2d 6 (Mo.) ; *Castrovinci* v. *Castrovinci*, 112 N.E.2d 53 (Ohio) ; *Jenkins* v. *Kaplan*, 141 A.2d 802 (N.J. Sup. Ct. App. Div.) and cases cited therein.[5]

## II

■■■ Under the federal legislation which was in force here the conclusions of the trial court would have perhaps a ground for support since the direct *judicial* action of liquidated damages or treble damages was the sole relief for the injured tenant, said action being limited to the overcharge paid within the year preceding the filing of the suit in court. The only legislation applying to this case, which arose after December 1, 1954, is the local housing and rent statutes, which as we shall see, provide differently. As originally approved on April 25, 1946, Act No. 464 granted in its § 8 as reimbursement to the tenant who had paid an amount in excess of the *basic* rent or the reasonable rent fixed by the Administrator, liquidated damages for $50 or for three times the amount by which the rent paid exceeded the applicable rent, whichever amount was greater, plus costs and fees. These damages could be claimed only within the year following the date on which the rent was paid. At the beginning our statute followed the familiar federal standard. But in its next ordinary session the Legislature substantially modified § 8, as it reads today, by Act No. 421 of May 14, 1947 (Sess. Laws, p. 850) providing for administrative restitution or reimbursement of excessive rent collections. It was then provided that the landlord who charges or receives from his tenant an amount in excess of the maximum rent fixed by the Administrator, *shall return* said excess to his tenant within thirty days following the request therefor by the tenant or the Administrator; and that in

---

[5] In *Shread* v. *Breton*, 132 N.E.2d 177, the Judicial Supreme Court of Massachusetts recognized under § 205, the right of the tenant to obtain *restitution* of overcharges, but this is not the controlling interpretation. Compare also *Brinkmann* v. *Urban Realty Co.*, 89 A.2d 394 (N.J.).

those cases where the Administrator reduces the rent including reimbursement to the tenant, the landlord shall make such reimbursement also within 30 days following the date of the order for reimbursement. (Section 8(a), (b).) If within said term of 30 days the parties agree or on petition of any of them, the Administrator authorizes it, the reimbursement may be made in the form of future partial payments that may be deducted from the future rent if the tenant continues occupying the premises. (Section 8(c).)

Section 8(d) preserved for the tenant the judicial action of liquidated damages for $50, or for three times the sum of the reimbursement, whichever was greater, plus costs and fees, but unlike the Federal Act and § 8, as originally approved, the judicial action for damages was now relegated to second place, and could only be filed in the cases where the landlord refuses to refund or reimburse the excess to the tenant, as ordered or requested within the period of 30 days mentioned in paragraphs (a) and (b); or to carry out the agreement of paragraph (c).[6] By the manner in which § 8 was amended it became clear that the legislative intent was to require the owner as first requisite, to return administratively the rent which was collected in excess of the lawful maximum in violation of the statute or its standards. Apparently this was the remedy chosen by the lawmaker to enforce compliance with the Act and its public policy and to discourage violations, not permitting the landlord to retain for his benefit illegal amounts which belonged to the tenant. Hence for the purposes of reestablishing the state of right in rent collections which should have always prevailed, save for the violation, a statutory limitation was not fixed as to the tenant's right to merely obtain administrative reimbursement of excess rentals, unlike the judicial action for treble damages, which owing to its punitive nature, permits the

---

[6] The legislative history of Act No. 421 amending § 8 does not show the reasons for this substantial change of legislative standard in the operation of the statute.

tenant to obtain by way of penalty amounts in excess of those he paid.[7]

The extrajudicial restitution of overcharges within a fixed term after demand or administrative order and, in default thereof, the judicial action for damages on noncompliance with the foregoing, constitute separate and different steps in the application of the Act and its compliance.

▇▇▇▇▇ Section 5 (*d*) authorizes the Administrator to make . . . "such rules, . . . *orders* and determinations as he may deem necessary or proper," in order to carry out the purposes of the Act. Apart from the fact of whether a case reaches the stage where it is necessary to resort to judicial action, it is unquestionable that in those cases where pursuant to the Act reimbursement lies, the Administrator not only has power but is compelled to enter an order of reimbursement covering any rent collected by a landlord in excess of the permissible amount, as a means of enforcing the purposes of the Act contained in paragraphs (*a*), (*b*) and (*c*) of § 8 concerning administrative restitution or reimbursement, without which previous step judicial action cannot be instituted. The specific amount to be obtained by way of treble damages does not lie within the Administrator's sphere and it is for the courts to decide it in the light of the statutory provision. Undoubtedly the courts cannot grant triple reimbursement of an overcharge paid prior to the year immediately preceding the date of the filing of the complaint, which is the correct starting point for counting said year and not the date on which the Administrator enters an order for reimbursement. As a question

---

[7] On the other hand it was not considered a healthy standard in housing and rent relations to permit the unjust enrichment of the tenant through this punitive action, showing indifference or even consciously paying the overcharge for an indefinite length of time in order to obtain subsequently its threefold recovery. Hence at all times and in the federal as well as in our legislation, this action has always been limited to triple reimbursement of only those overcharges paid during the reasonable period of one year immediately prior to the filing of the complaint.

of fact the Administrator could not determine at the time of entering an order for reimbursement what overcharges would have prescribed in case of using judicial action, without knowing the time when such action would be filed. In the light of the foregoing the determination of the lower court modifying the orders of reimbursement so as to limit the restitution to the overcharges collected within the year immediately prior to the date of said orders was not correct according to law.[8]

 In this case the Superior Court had before its consideration, as we do now, the direct review of the administrative order and not an action for liquidated damages. It is advisable to note that we are not deciding now nor anticipating any judgment, which shall be left for the proper occasion, as to whether or not under the provisions of paragraphs (*a*) and (*b*) of § 8 the tenant may claim judicially the simple reimbursement of the overcharges, or file the action for damages, whether or not he may claim the simple excess paid after the one-year limitation as a second cause of action, or whether, on the contrary, in case that the owner declines to return administratively, his sole relief is triple judicial reimbursement, but with the limitation provision.

In view of the foregoing the judgments entered by the San Juan Part of the Superior Court in Cases Nos. 57–6443 and 57–6576, *Harry Nadal Skerret* v. *Mejías, Administrator*, are set aside, insofar as they modified the administrative

---

[8] Even within the very reasonings of the trial court, its determination would likewise be incorrect since based on the erroneous action of the Administrator upon giving retroactive effect to the reasonable rent, the court considered that said reasonable rent of $57.70 was already fixed at the time when the tenants occupied the premises and applied then the first provision of § 8(*h*), which computes the period of limitation as of the payment of the overcharge. The administrative error having been discarded, the order in this case was one of reduction of rent with reimbursement to the tenant (if not of the whole amount to which he was entitled each month) the limitation period for the filing of the complaint starting to run in such cases from the date of the order for reimbursement.

orders for reimbursement so as to limit their amount to those overcharges paid within the year preceding the date of the orders, and the original records shall be remanded to the trial court for further proceedings not incompatible with this opinion.