Sandor SCHWARTZ, Plaintiff,

v.

Robert J. BOWMAN, Robert J. Bulkley, Cyrus S. Eaton, Herbert Fitzpatrick, Allan P. Kirby, William H. Lipscomb, Harry C. Thompson, Walter J. Tuohy, Robert R. Young, Thomas J. Deegan, Jr., Barnum L. Colton, Cyrus S. Eaton, Jr., Roger H. Ferger, Martin S. Fotheringham, Fay A. Lefevre, Clinton W. Murchison, Sidney W. Richardson, Alleghany Corporation and The Chesapeake & Ohio Railway Co., Defendants.

United States District Court
S. D. New York.
Oct. 18, 1957.

J. Milton Fainer, New York City, for plaintiff, Sidney L. Garwin, New York City, of counsel.

Donovan, Leisure, Newton & Irvine, New York City, for defendants Cyrus S. Eaton, Walter J. Tuohy and Cyrus S.

Eaton, Jr., Walter R. Mansfield, New York City, Burr F. Coleman, of counsel.

DIMOCK, District Judge.

This action was instituted against defendants Cyrus S. Eaton, Walter J. Tuohy, and Cyrus S. Eaton, Jr., by service of a summons upon them outside of the District. They move for summary judgment dismissing the action as to them upon the ground that the Investment Company Act of 1940, 54 Stat. 789, 15 U.S.C. § 80a–1 et seq., the ostensible authority for such out-of-district service, is inapplicable. In the event that the Investment Company Act is held to be applicable, they move, in the alternative, that there be stricken from the complaint such claims of plaintiff as do not rest upon that Act.

The action is a derivative one by a stockholder of The Chesapeake & Ohio Railway Company, hereinafter C & O, against Alleghany Corporation, hereinafter Alleghany, and various defendants, among whom are the three moving defendants who were directors of C & O. The complaint alleges that, pursuant to a conspiracy participated in by all of the defendants to enable Alleghany to obtain a block of 800,000 shares of stock of the New York Central Railroad Company, hereinafter New York Central, from C & O, at an inadequate price, Alleghany sold 104,854 shares of C & O stock to defendant Eaton at an inadequate price, that defendant Eaton, by virtue of control of C & O thus obtained, caused C & O to sell to Alleghany through agents 800,-000 shares of New York Central stock at an inadequate price. It is alleged that the sale of the New York Central stock to Alleghany was void because Alleghany at the time of the sale was subject to the Investment Company Act and yet did not register with the Securities and Exchange Commission as required by that Act. The relief demanded is that defendant Eaton account for his profits on his purchase of 104,854 shares of C & O from Alleghany, that the sale of 800,000 shares of New York Central stock by C & O to Alleghany be set aside and that the individual defendants account for their profits and for the damages that they have caused C & O.

First I will take up the motion for summary judgment dismissing the suit as to the moving defendants made upon the ground that the Investment Company Act, the ostensible authority for out-of-state service upon them, is inapplicable.

It cannot be gainsaid that at the time of the sale of 800,000 shares of New York Central stock by C & O there was outstanding an order of the Interstate Commerce Commission providing that "Unless and until otherwise ordered by this Commission said Alleghany Corporation shall be considered as a carrier subject to the provisions of section 20(1) to (10) inclusive [49 U.S.C. §§ 20(1)–(10)], and section 20a(2) to (11) inclusive [49 U.S.C. §§ 20a(2)–(11)], of the Interstate Commerce Act". Order of June 5, 1945 in Finance Docket No. 14692. See Chesapeake & O. Ry. Co. Purchase, 261 ICC 239. But for this provision Alleghany would have been an investment company subject to the provisions of the Investment Company Act. Under section 80a–3(c) (9) of that Act "Any company subject to regulation under the Interstate Commerce Act" is withdrawn from the class of investment companies. Moving defendants therefore say that Alleghany at the time of the sale of the New York Central stock by C & O was not subject to the provisions of the Investment Company Act and that the sole basis for personal jurisdiction over them thus melts away. Plaintiff, on the other hand, says that, irrespective of the terms of the order of June 5, 1945, Alleghany was in fact subject to the provisions of the Investment Company Act and that its purchase of the New York Central stock from C & O was therefore void under sections 80a–7 and 80a–46.

The basis for the order of June 5, 1945, which purported to give Alleghany the status of a carrier subject to the enumerated provisions of the Interstate Commerce Act, was its control of C & O. Section 5(2) (a) (i) of the Interstate

Commerce Act, 41 Stat. 481, 49 U.S.C. § 5(2) (a) (i), provides for authorization by the ICC of acquisition by a person, which is not a carrier, of control of two or more carriers and, in subdivision (3), that, whenever a person which is not a carrier is so authorized, it shall, "to the extent provided by the Commission in such order, be considered as a carrier" subject to the enumerated provisions of the Act. The order of June 5, 1945 resulted from an application by Alleghany for approval and authorization of control by it, through the C & O, of the properties of the Norfolk Terminal & Transportation Company and continuance of its relationship with carriers controlled by it directly or indirectly, including the C & O, the Nickel Plate and the Pere Marquette. On January 19, 1954, Alleghany divested itself of the C & O stock that it had theretofore held. The Nickel Plate stock had been earlier sold and the Pere Marquette merged with the C & O. Thus at that point Alleghany no longer controlled any carriers and was thus ineligible for exemption from the Investment Company Act.

This question of the effect of Alleghany's ceasing to be qualified for exemption from the provisions of the Investment Company Act came before a three-judge court in this District, consisting of Circuit Judge Hincks and District Judges Walsh and Dimock, in Breswick & Co. v. United States, on an application for a preliminary injunction and before Circuit Judge Frank and District Judges Walsh and Dimock upon final hearing.

On the application for the preliminary hearing, two of the three judges held, 134 F.Supp. 132, 142: "Whatever might have been the terms of the order of June 5, 1945, they could not have conferred upon Alleghany qualifications to be 'considered as a carrier' which it did not possess. From the instant of Alleghany's relinquishment of control of the C. & O. and the Nickel Plate, plaintiffs here were entitled to the special protection which Congress has provided for stockholders in investment companies which do not control railroads. Although

failure to apply for vacation of the order might estop Alleghany, it could not shield it from the S.E.C. and it would not be binding upon such third persons as stockholders of Alleghany. As to all except Alleghany, which had accepted the 1945 order as it read, its provision for regulation by the I.C.C. after the factual basis for I.C.C. jurisdiction ceased, was empty fiat."

At final hearing, the point was disposed of unanimously on the ground that the order of June 5, 1945 had been expressly terminated before the action there under review was taken so that it did not constitute even a clerical obstacle to a determination that Alleghany was then subject to the Investment Company Act. The court did, however, discuss the claim that the order, if existing, would not have been such an obstacle and stated its opinion, 138 F.Supp. 123, 129, that "when Alleghany divested itself of the control of all carriers, the order of June 5, 1945, became inoperative."

In reaching that conclusion the court referred to its earlier rejection of the contrary position and stated that it saw no reason for abandoning that rejection. As ground for saying that the order of June 5, 1945 was still effective in exempting Alleghany from the Investment Company Act, Alleghany cited section 15(2) of the Interstate Commerce Act, 41 Stat. 485, 49 U.S.C. § 15(2), which provides that "all orders of the commission * * * shall continue in force until its further order." The court refused to give effect to this language in a case like the present, holding that it referred solely "to rate orders or the like" which are the subject of section 15(1). It rested its interpretation on (a) legislative history indicating that one reason for the enactment of Section 15(2) in 1920 was the abolition of a two-year time limitation that had previously been placed on rate orders in Section 15(1); (b) the fact that the general heading of Section 15 refers to "Determination of rates, routes, etc.; routing of traffic; disclosures, etc.;" and (c) a footnote in the Supreme Court's decision in United

States v. American Railway Express Company, 265 U.S. 425, 430, note 3, 44 S.Ct. 560, 562, 68 L.Ed. 1087.

■ Moving defendants marshal additional material in opposition to this interpretation of section 15(2) and ask me to depart from the dictum in the Breswick case. I have concluded, however, that, even were I to do so and hold that section 15(2) might apply in a proper case to an order other than a rate order, Alleghany must nevertheless, for the purposes of this motion, be considered as subject to the Investment Company Act from the instant of its divestiture of its subsidiary carriers.

In this case no effect in favor of the moving defendants can be given to the statutory declaration that orders of the ICC shall continue in effect until dissolved. The ICC has quite properly intimated that it is not allowable for a party which has been authorized to acquire control of a carrier to divest itself of that control without similar authorization. The Commission said, in Wheeling & L. E. Ry. Co. Control, 267 I.C.C. 163, 182:

"The end of the declared national transportation policy of Congress is the developing, coordinating, and preserving of a national transportation system. All initiative in the matter of unification is left with the carriers but, in aid of the Congressional policy, means of accomplishing unification, otherwise prohibited, are provided in section 5(2). If, after our authorization and approval in the premises were obtained and exercised, the carriers were free to deal with relationships thus created, that is, to continue them or to dissolve them at their own election, our determinations could be annulled and the policy of Congress defeated at their pleasure. We think that this would be in direct contravention of that purpose and, therefore, that the Chesapeake & Ohio's ability, without our authority, to dispose of its interests in carriers which it controls, pursuant to authorization

sought and obtained from us, is gravely questionable."

It was thus the duty of Alleghany to apply for authority to divest itself of control of the C & O. If it had done so and authority had been granted, the ICC would have been bound to terminate any order which gave to the ICC authority over Alleghany based on Alleghany's control of the C & O. Now we are told by the moving defendants that, because of Alleghany's failure to perform its duty, it has averted the supervision by the Securities and Exchange Commission that would have resulted had it performed its duty. I cannot accept that conclusion.

Perhaps an innocent third party could rely upon the statutory declaration of the effectiveness of ICC orders until dissolved but here it is alleged that the sale of the New York Central stock was made pursuant to a conspiracy to which Alleghany and the moving defendants were parties and that the moving defendants knew of the facts which required Alleghany's registering with the SEC and of Alleghany's failure to register. The moving defendants have not attempted to pierce these allegations. Under them they are in the same position as Alleghany with respect to the jurisdiction of the SEC over the transaction.

I must therefore deny defendants' motion for summary judgment dismissing the action.

I now pass to the motion to strike out as to the moving defendants so much of the complaint as is not based upon the Investment Company Act. The motion rests upon the fact that service of the summons on them was made outside of the State of New York and the contention that the only claim stated in the complaint which can be instituted by such service is the claim for a violation of the Investment Company Act. See 15 U.S.C. § 80a–43.

In answer to the motion plaintiff cites Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, the case which inaugurated the doctrine of "pendent juris-

diction". There the plaintiff pleaded a claim under the Copyright Act and another claim based upon unfair competition supported by the same facts. The trial court, affirmed by the Circuit Court of Appeals, 2 Cir., 61 F.2d 1031, dismissed the claim for infringement of the copyright on the merits and, since the parties were citizens of the same state, dismissed the claim for unfair competition for lack of jurisdiction.

The Supreme Court held that the District Court was not without jurisdiction of the claim for unfair competition and should have disposed of it on the merits. Since the same defect which was fatal to the claim of copyright infringement was also fatal to the claim based on unfair competition, the Supreme Court merely modified the decree by providing for the dismissal of the claim based on unfair competition on the merits. In holding that the District Court had jurisdiction of the claim based on unfair competition the Supreme Court called attention to the fact that the claim for copyright infringement and the claim based on unfair competition were supported by substantially the same facts and that they were not different causes of action but merely stated different grounds for success upon the same cause of action, saying 289 U.S. at page 246, 53 S.Ct. at page 589: "The distinction to be observed is between a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the nonfederal *ground;* in the latter it may not do so upon the nonfederal *cause of action."*

Plaintiff argues that all of the claims alleged in the complaint are supported by substantially the same facts and constitute but a single cause of action, that,

therefore, the federal court has jurisdiction of the subject matter of all of the claims since it has jurisdiction of the subject matter of the claim based on the Investment Company Act and that, therefore, the personal jurisdiction that the court has obtained over the moving defendants for the purposes of the claim under the Investment Company Act constitutes personal jurisdiction over them for the purposes of the "pendent" claims.

There is certainly no ground for the assertion that the claim against defendant Eaton based on the sale of C & O stock by Alleghany to him for an inadequate price is supported by substantially the same facts as the claim based on the alleged unregistered sale of New York Central stock by C & O to Alleghany, a company subject to the Investment Company Act. Thus, even if there is substance to plaintiff's claim that where there is pendent jurisdiction over the subject matter there is pendent jurisdiction over the person, there is no pendent jurisdiction over the subject matter of the claim against defendant Eaton based on the sale of the C & O stock by Alleghany to him.

I have grave doubt whether even the claim against the moving defendants based on the sale of New York Central stock to Alleghany for an inadequate price can be considered to be so related to the claim under the Investment Company Act as to be pendent thereon. I need not decide that, however, since, in spite of Miller v. Hano, D.C.E.D.Pa., 8 F.R.D. 67, I am clear that it does not follow that, because a claim is pendent upon a federal claim for the purposes of jurisdiction over the subject matter, the claim is pendent for the purposes of jurisdiction over the person.

In Hurn v. Oursler, 289 U.S. 238, 246, 53 S.Ct. 586, 77 L.Ed. 1148, supra, the federal court was held to have jurisdiction over a non-federal claim which was provable by substantially the same facts as a federal claim which was before the court. The rationale of the decision was that a plaintiff, who had an arguable claim to a federal right which would have

to be enforced in the federal court and a claim to a non-federal right based on the same facts, ought to be permitted to assert both claims in the federal court so that, if the federal right failed, he would not have to present the same evidence over again in the state court. In granting this privilege to the plaintiff the court caused no more hardship to the defendant than forcing him to answer in the federal court of a certain district a claim to which he would have been amenable in the state court in that district. Doubtless there is sound policy in favor of permitting a plaintiff to assert in one court all his claims based on the same facts. Nevertheless that policy is not so strong as to compel the conclusion that whenever the court has personal extra-territorial jurisdiction over a defendant to enforce one claim it must have personal extra-territorial jurisdiction over him to enforce every other claim pendent thereon. The advantage to the plaintiff is outweighed by the hardship upon the defendant.[1] Moving defendants cite the instant case as a good example of the extent of such hardship. Insofar as the claim for rescission based on a violation of the Investment Company Act is concerned, the moving defendants say that they are mere nominal defendants with no interest in the outcome. With respect to the other claims, however, they are sought to be charged with damages and must come from Ohio with their records to defend themselves if extra-territorial service thereon is permitted.

Thus, even though the claims here which are not based on the Investment Company Act were pendent upon the claim which is so based, I would be of opinion that the provision for extra-territorial service upon claims under the Investment Company Act did not extend to the pendent claims. The requirement of Rule 4(f), F.R.Civ.P., 28 U.S.C., that service be made within the state of the district will not yield to any analogy so weak as that of federal court jurisdic-

tion of the subject matter of pendent, though non-federal, claims.

The motion to dismiss the entire complaint as to moving defendants is denied. The motion to strike from the complaint certain claims thereof as to them is granted.

Settle order on notice.

---

[1]. See the strict construction of an extra-territorial service statute in United

States v. Rhoades, D.C.D.Colo., 14 F.R.D. 373.