Sandor SCHWARTZ, Plaintiff-Appellant,

v.

Cyrus S. EATON, Walter J. Tuohy, and Cyrus S. Eaton, Jr., Defendants-Appellees.

No. 85, Docket 25219.

United States Court of Appeals Second Circuit.

Argued Jan. 8, 1959.

Decided Feb. 24, 1959.

Concurring Opinion Feb. 26, 1959.

Sidney L. Garwin, New York City (J. Milton Fainer, New York City, on the brief), for plaintiff-appellant.

Carl E. Newton, of Donovan, Leisure, Newton & Irvine, New York City (Walter R. Mansfield, Helmut F. Furth, and Thomas J. Garrity, of Donovan, Leisure, Newton & Irvine, New York City, on the brief), for defendants-appellees.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and GIBSON, District Judge.

CLARK, Chief Judge.

The issues on this appeal arise in a derivative action brought by plaintiff, as a stockholder of The Chesapeake & Ohio Railway Co., against Alleghany Corpora-

tion, various past and present directors of C & O and of Alleghany, and two other individuals, Clinton W. Murchison and Sidney W. Richardson, with C & O also named as defendant. Summons and complaint were served on defendants Cyrus S. Eaton, Walter J. Tuohy, and Cyrus S. Eaton, Jr., appellees here, in Cleveland, Ohio, pursuant to the provisions of § 44 of the Investment Company Act of 1940, 15 U.S.C. § 80a—43. Suing in the right of C & O, plaintiff alleges that Alleghany sold a block of C & O stock to Eaton for less than its value as part of a scheme designed to transfer a large block of New York Central stock from C & O to Robert R. Young, Allan P. Kirby, and Alleghany to aid Young in a proxy fight for control of the New York Central. Thereafter the Young controlled board of C & O allegedly allowed itself to be replaced by Eaton and his appointees; and indirectly through Murchison and Richardson, the Eaton board of C & O sold its New York Central holdings to Alleghany, Young, and Kirby for less than the value of that stock. Seeking equitable relief to undo this transfer and an accounting of profits and of damages to C & O, plaintiff asserts a violation of the Investment Company Act of 1940, 15 U.S.C. §§ 80a—1 to 80a—52, and of the ordinary fiduciary obligations of company officers and directors. Jurisdiction is alleged both under the Act and because of diversity of citizenship.

By motion to dismiss under F.R.C.P., rule 12, appellees objected both to the manner of service upon them and to the sufficiency of the complaint. In a reasoned decision, D.C.S.D.N.Y., 156 F. Supp. 361, the district court held that the complaint was properly served outside the State of New York under 15 U.S.C. § 80a—43, and that it stated a claim under

the Investment Company Act upon which relief can be granted. It then concluded, however, that plaintiff's "claims" based on nonstatutory theories of law were not properly before the court as to the extraterritorially served movants. So ruling, it then purported to enter a final judgment under F.R. 54(b) dismissing such "claims" without prejudice, quashing service of process upon these defendants as to such claims, and striking from the prayer for relief in plaintiff's complaint the paragraph asking that defendant Eaton account to C & O for his profits on his purchase of C & O shares from defendant Alleghany.[1] From this order plaintiff seeks to appeal.

■ As shown by Judge Dimock's refusal to strike a single pleaded allegation of fact and by the pleading itself, properly drafted in a single count, all of the facts on which plaintiff relies constitute but a single transaction composed of a closely related series of occurrences. F. R. 54(b), which gives the district court the power to enter a final judgment covering only a part of the litigation before it, is applicable by its terms only to separate and distinct *claims*. It is so thoroughly settled that such a claim is a set of facts giving rise to one or more legal rights, and that F.R. 54(b) cannot be used to appeal a part of a single claim or, as here, to test a single legal theory of recovery, that citation of authority for the point would seem pedantic were it not for the fact that both parties have joined to urge upon us the appealability of the district court's order. Thus on the definition of claim, see the classic statement of Swan, J., in Original Ballet Russe v. Ballet Theatre, 2 Cir., 133 F.2d 187, 189;[2] the holding and opinion in Reeves v. Beardall, 316 U.S. 283, 285, 62

---

1. Left in, however, was a prayer—in addition to the injunctive relief sought for the undoing of the transaction—for judgment "[r]equiring the individual defendants and Alleghany to account for their profits and for C. & O.'s damages resulting from the acts, and transactions herein alleged."

2. "For the traditional and hydraheaded phrase 'cause of action' the Federal Rules of Civil Procedure have substituted the word 'claim.' It is used to denote the aggregate of operative facts which give rise to a right enforceable in the courts. See 1 Moore, Federal Practice, pp. 3, 145–150, 605; Clark, Code Pleading, §§ 19, 70."

S.Ct. 1085, 1087, 86 L.Ed. 1478;[3] and cases such as Petrol Corp. v. Petroleum Heat & Power Co., 2 Cir., 162 F.2d 327, 329; Pabellon v. Grace Line, 2 Cir., 191 F.2d 169, 174, certiorari denied Coston Supply Co. v. Pabellon, 342 U.S. 893, 72 S.Ct. 201, 96 L.Ed. 669, and others cited and discussed in Clark, Code Pleading 141, 146–148 (2d Ed. 1947). On the point that multiple claims are the necessary basis for the operation of F.R. 54 (b), see, among many others, Cott Beverage Corp. v. Canada Dry Ginger Ale, 2 Cir., 243 F.2d 795, showing the interrelationship with Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297; Leonidakis v. International Telecoin Corp., 2 Cir., 208 F.2d 934; Capital Transit Co. v. District of Columbia, 96 U.S.App.D.C. 199, 225 F.2d 38, 40; Flynn & Emrich Co. v. Greenwood, 4 Cir., 242 F.2d 737, certiorari denied 353 U.S. 976, 77 S.Ct. 1060, 1 L.Ed.2d 1137; Panichella v. Pennsylvania R. Co., 3 Cir., 252 F.2d 452; Coffman v. Federal Laboratories, 3 Cir., 171 F.2d 94, 96–97, certiorari denied 336 U. S. 913, 69 S.Ct. 603, 93 L.Ed. 1076; 6 Moore's Federal Practice ¶54.33, pp. 238–240 (2d Ed. 1953) and 1958 Supp.; 38 A.L.R.2d 383–386. We know of no authority to the contrary.[4]

▮ From every angle the district court's action in attempting to dismiss a part of plaintiff's legal theories appears a nullity. The striking of a portion of the prayer for relief was surely a futile and meaningless gesture. F.R. 54(c); United States v. Lesniewski, 2 Cir., 205 F.2d 802; Fanchon & Marco v. Paramount Pictures, 2 Cir., 202 F.2d 731, 36 A.L.R.2d 1336; Nagler v. Admiral Corp., 2 Cir., 248 F.2d 319, 328. And the trial judge at the close of the case will still be obligated to grant the parties the relief to which they prove themselves entitled. F.R. 54(c). Judge Dimock's observation on the propriety of the plaintiff's legal theories resulted in no definitive action which would bind the court; and as the court has jurisdiction of the entire case, not merely certain issues of law, Osborn v. Bank of U. S., 22 U.S. (9 Wheat.) 738, 821–822, 6 L.Ed. 204, it lacks no power to do so. See Jung v. K. & D. Mining Co., 7 Cir., 260 F.2d 607.

Moreover, we do not see that the ruling plaintiff seeks to appeal will even affect the evidence introduced at trial. Plaintiff may still proceed, of course, on the breach of the Investment Company Act alleged in his complaint—which Judge Dimock construed to charge a conspiracy or joint venture to cause C & O and Alleghany to engage in a transaction prohibited by the Act, D.C.S.D.N. Y., 156 F.Supp. 361, 364. What evidence can there be relevant to breach of appellees' duties as directors which is not relevant to this remaining charge? Appellees suggest that the alleged relevance of the New York Central shares to the proxy fight for control of that line, the alleged disparity between sale price and value of those shares, appellees' alleged knowledge of this disparity, and the alleged secrecy in which the transaction was consummated—all relate only to the legal theory stricken below. But on the contrary, all these facts, and even the circumstances surrounding the sale of C & O shares by Alleghany to Eaton, seem clearly relevant to proof of a common motive by all defendants to consummate the sale of New York Central shares, despite the prohibition of the Investment Company Act. Even the remedy sought, both the injunction and the accounting for profits and the damage to C & O, is

---

3. "The Rules make it clear that it is 'differing occurrences or transactions, which form the basis of separate units of judicial action.' Atwater v. North American Coal Corp., 2 Cir., 111 F.2d 125, 126. And see Moore, op. cit. [3 Moore, Federal Practice, Cum.Supp.1941], 92–101; 49 Yale L.Journ. 1476."

4. The recent statute making provision for limited appeals from certain interlocutory orders, 28 U.S.C. § 1292(b), had not been enacted at the time of the decision below. In any event its provisions would appear not here applicable.

identical.[5] A court would be quite justified in giving a general judgment for plaintiff (if the facts are proven) without specific isolation of the precise rationale; or on the other hand, it might give a general judgment for the defendants which would appear to be fully *res judicata* as to the transaction complained of. While lawyers may proliferate their theories and fragmentize the issues, it is quite clear that lay witnesses cannot break up their stories of past events in such fashion. So every consideration of trial convenience for litigants and courts accords with the legal principle pointing to a complete determination of this controversy at one time.[6]

We add that we can perceive no additional hardship upon the defendants here in expecting them to defend their actions against claims of violation of state law, as well as for rescission under the federal statute. Under the latter, as well as the former, theory, they are more than nominal parties; if the alleged facts are proven they *may well be liable for* sums necessary to restore C & O to its former position. In any event, we cannot believe that appellees—all present directors of C & O—would make no active defense of C & O's role in the transaction until or unless they could foresee a personal liability resting on them.

Appeal dismissed.

MOORE, Circuit Judge (concurring in the result).

I concur in the result because the dismissal of the appeal leaves the order of the district court in full force and effect. Upon any subsequent trial the order and the able analysis of the issues in the district court's opinion will serve as a guide for the trial judge. There can be no question that had a derivative stockholder's action against the individual defendants for fraud and malfeasance been filed, personal jurisdiction would have to be obtained in the manner provided by law, i. e., personal service. In my opinion these legal requirements cannot be by-passed or evaded merely by adding a long factual narrative and a prayer for relief to a statutory action brought under the Investment Companies Act. The extent to which any or all of the facts alleged may be relevant to the claims made under the Act will be for the trial judge to determine.

Jurisdiction has been obtained as to the claim under the Act because extraterritorial service is specifically sanctioned by the Act. It is not for the courts to make up their own jurisdictional rules for each case. To declare the circumstances under which our citizens must respond to legal process is the function of Congress. Whether personal service should be limited is not open for judicial debate. The rules are clear and defendants as well as plaintiffs are entitled to equal protection under the law.

All defendants should be entitled to know the charges to which they must respond. Where no jurisdiction has been obtained there is no such duty. The district court has separated the two areas. Were plaintiff's tactics in pleading fol-

---

5. That such remedies may be had under the Investment Company Act is made clear by the earlier part of Judge Dimock's decision, D.C.S.D.N.Y., 156 F. Supp. 361; and see Breswick & Co. v. Briggs, D.C.S.D.N.Y., 136 F.Supp. 301; Cogan v. Johnston, D.C.S.D.N.Y., 162 F.Supp. 907.

6. At most defendants can only hope to wage two defensive battles in two places in place of a single decisive engagement; but even that dubious gain may not be at hand. Since there appears to be diversity of citizenship between plaintiff and these defendants, suit in the federal courts on all claims is proper; and transfer under 28 U.S.C. § 1404(a) and consolidation under F.R. 42(a) may still make a single trial possible. On the use of the transfer statute see In re Josephson, 1 Cir., 218 F.2d 174, 183–186, with which compare Foster-Milburn Co. v. Knight, 2 Cir., 181 F.2d 949, with criticism in 60 Yale L.J. 183 (1951) and Moore's Federal Rules 68 (1956); Anthony v. Kaufman, 2 Cir., 193 F.2d 85, certiorari denied 342 U.S. 955, 72 S.Ct. 629, 96 L.Ed. 710, and cases collected in 1 Barron & Holtzoff, Federal Practice and Procedure 91–94 (1958 Pocket Part).

lowed a plaintiff might well include in a foreclosure action tort allegations for negligence arising out of an accident on the property under foreclosure and claim that since the defendant would probably respond to service by publication or mail that all controversies might as well be disposed of at the same time.

Here jurisdiction has been obtained so far as the claim may arise under the Act and service has been quashed as to any other claim. Therefore the area of controversy is sufficiently defined in the district court's order.