**NEW ENERGY COMPANY OF INDIANA and New Energy Corporation of Indiana, Plaintiffs,**

v.

**CIGNA INSURANCE COMPANY, Defendant.**

No. IP 87–1264–C.

United States District Court, S.D. Indiana, Indianapolis Division.

April 29, 1988.

Robert D. MacGill, Greta Morris, Susan B. Bayh, Barnes & Thornburg, Indianapolis, Ind., for plaintiffs.

Richard R. McDowell, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, Ind., Stephen D. Marcus, Vincent T. Borst, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, Ill., for defendant.

## ENTRY

BARKER, District Judge.

*Factual Background*

Defendant CIGNA Insurance Company ("CIGNA") is a California corporation; its principal place of business is the state of Delaware and its main office is in the state of Indiana. The first-named plaintiff, New Energy Company of Indiana ("NECOMI"), is a limited partnership organized under Indiana law. Some of NECOMI's limited partners are citizens of CIGNA's state of incorporation, California. The second-named plaintiff is New Energy Corporation of Indiana ("NECOR"), a corporation organized under Indiana law. NECOR is the general partner in NECOMI.

The instant case revolves around an insurance policy which CIGNA issued to plaintiffs. The policy allegedly contained CIGNA's obligation to reimburse the New Energies [1] for possible design or construc-

---

1. Because this entry concerns 28 U.S.C. § 1441, it must sometimes refer to NECOMI and NECOR collectively. Consequently, when this entry refers to both entities it will employ the words "New Energies."

tion errors in a planned energy production facility in the state of Indiana. The New Energies allege that, during the design and construction of the facility, work covered by the policy was inadequately performed and damaged some of the facility's machines. These setbacks required the New Energies to redesign or rebuild the faulty work, and these remedial efforts so taxed plaintiffs' resources that they appealed to CIGNA for compensation under the policy. CIGNA responded that it was not obliged to pay for the repairs, and refused plaintiffs' claim.

As a result the New Energies filed a suit for damages against CIGNA in state court on November 10, 1987, alleging injury from CIGNA's wrongful denial of their policy claim. Two weeks later CIGNA removed the action in this court, alleging original jurisdiction based on diversity of citizenship. On December 9, 1987, plaintiffs filed a motion to remand, alleging lack of jurisdiction based on the fact that NECOMI's California limited partners were non-diverse vis-a-vis CIGNA. CIGNA replied by repeating its claim that NECOMI is properly diverse to CIGNA, and by asserting in the alternative that federal jurisdiction is proper under the "separate and independent" provisions of section 1441(c).

### Discussion and Decision

#### I. Diversity Jurisdiction Under 28 U.S.C. § 1332

■ Plaintiffs' first ground for remand is lack of diversity between NECOMI and CIGNA. The diversity requirement for federal jurisdiction is set forth in 28 U.S.C. § 1332(a)(1), which requires that the parties be citizens of different states.[2] Plaintiffs contend that the limited partners of NECOMI who are citizens of California should be included in a section 1332 diversity determination. The New Energies claim that if NECOMI's limited partners are so included this case should be remanded under the holding in Owen Equip. & Erection Com-

pany v. Kroger, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978), that "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." (Emphasis original). *See also Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 267–68, 2 L.Ed. 435 (1806). CIGNA responds that this case meets section 1332(a)(1)'s requirement because NECOMI's California partners must be excluded from a diversity analysis of this case.

The Seventh Circuit appeared to enunciate the applicable diversity rule for limited partnerships in *Elston Investment, Ltd. v. David Altman Leasing Corporation,* 731 F.2d 436 (1984). In that case suit was brought by an Illinois limited partnership against a Delaware corporation. One of plaintiff's limited partners was also a Delaware corporation. Addressing the contention that limited partners should be excluded from diversity analysis, the Seventh Circuit stated that "unincorporated associations [are] mere collections of individuals. When the 'persons composing such association' sue in their collective name, they are the parties whose citizenship determines the diversity jurisdiction of a federal court." *Id.* at 437–38 (*quoting Great Southern Fire Proof Hotel Co. v. Jones,* 177 U.S. 449, 456, 20 S.Ct. 690, 693, 44 L.Ed. 842 (1900)) (footnote omitted). Consequently the court held "that the citizenship of a limited partnership is the citizenship of all the partners—both general and limited—composing the partnership." *Elston,* 731 F.2d at 439. Under *Elston,* CITNA is non-diverse to NECOMI. Thus, if applicable, *Elston* would bar this court from exercising jurisdiction under *Owen Equipment*'s requirement of complete section 1332(a)(1) diversity.

Yet CIGNA mounts two arguments as to why *Elston* should not apply to this case. First, on at least two grounds CIGNA urges that *Elston* should be "limited to its facts." CIGNA points out that *Elston* dealt with a partnership of three individu-

---

**2.** 28 U.S.C. § 1332(a)(1) provides:
    (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of

$10,000, exclusive of interest and costs, and is between—
    (1) citizens of different States ...

als, while NECOMI comprises over 3,000 partners. Furthermore, CIGNA claims that *Elston* involved a single claim by one plaintiff, while the instant suit involves two plaintiffs whose claims are "separate and independent" under section 1441(c). CIGNA's second argument for ignoring *Elston* is that it conflicts with the Supreme Court's interpretation of the diversity standard for limited partnerships. Hence, states CIGNA, *Elston* does not apply. This court, however, finds both of CIGNA's arguments against applying *Elston* unconvincing.

With regard to CIGNA's first argument, the court notes that *Elston* gave no indication that its holding was limited to "small" partnerships as opposed to "large" ones. The passages quoted above leave no doubt that the court of appeals intended to enunciate a diversity standard for *all* limited partnerships. CIGNA is correct in pointing out that *Elston* involved a single plaintiff, while the instant case involves two plaintiffs. But *Elston* cannot be read plausibly as limiting its holding to "one-plaintiff" lawsuits. The *Elston* court addressed the diversity standard for *limited partnerships;* it did not purport to enunciate a diversity standard for cases in which such partnerships sit alone at counsel's table.

Turning to defendant's second argument, CIGNA contends that *Elston* "does not comport with established Supreme Court authority ... [t]o date there has been no adjudication ... by the Supreme Court of [this issue]...." [3] CIGNA relies on two circuit court opinions which exclude limited partners from diversity analysis and which look only to the citizenship of the general partners to support its claim that this court should ignore *Elston*. *See Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corporation,* 797 F.2d 238 (5th Cir.1986); *Colonial Realty Corporation v. Bache & Company,* 358 F.2d 178 (2d Cir.

1966), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966).[4] CIGNA contends that both cases demonstrate that *Elston*'s rule is inconsistent with the law of federal jurisdiction.

CIGNA initially asserts that the Supreme Court's denial of certiorari in *Colonial Realty* establishes the "general-partner-only" diversity formula "by implication." It is hornbook law that a denial of certiorari is incapable of illuminating the Supreme Court's views of a given issue. Writs of certiorari are issued upon the discretion of the Supreme Court. Given the enormous annual number of certiorari petitions lodged there it cannot be plausibly asserted that the denial of such a writ indicates Supreme Court approval or disapproval of the lower court's decision. Even the briefest perusal of Supreme Court holdings on this issue makes this clear. *See, e.g., Brown v. Allen,* 344 U.S. 443, 497, 73 S.Ct. 397, 441, 97 L.Ed. 469 (1953); *Sunal v. Large,* 332 U.S. 174, 181, 67 S.Ct. 1588, 1592, 91 L.Ed. 1982 (1947); *House v. Mayo,* 324 U.S. 42, 48, 65 S.Ct. 517, 521, 89 L.Ed. 739 (1945). CIGNA can hardly expect this court to give greater import to the Supreme Court's denial of certiorari than the court itself gives to such denials.

CIGNA also argues that the *Mesa Operating* court "discerned" that the Supreme Court approved the "general-partners-only" diversity formula in *Navarro Savings Association v. Lee,* 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). Although it is true that *Navarro*'s holding (that only business trustees, and not trust beneficiaries, were to be counted for diversity purposes) was regarded by the *Mesa Operating* court to require an analogous exclusion of limited partners, *Mesa Operating,* 797 F.2d at 242–43, the *Elston* court considered the Supreme Court to have "explicitly rejected" this argument in *Navarro*

---

**3.** The court is at a loss to understand this contention. The absence of a Supreme Court decision on this issue cannot constitute the presence of established doctrine. *Elston,* therefore, cannot "violate" what does not exist. *See* Aristotle, *Metaphysics,* BK. IV (stating that "A" is not "non-A").

**4.** CIGNA also cites *Carlsberg Resources Corp. v. Cambria Sav. & Loan Ass'n,* 554 F.2d 1254, 1266 (3d Cir.1977) (Hunter, J., dissenting). *Carlsberg* held that limited partners are to be included in a section 1441(c) diversity analysis. For the reasons discussed *infra,* however, this court finds Judge Hunter's opinions unpersuasive.

itself. *Elston,* 731 F.2d at 438.[5] At most, therefore, *Mesa Operating* and *Elston* present a difference between two Circuits regarding the meaning of a Supreme Court decision. The mere fact of such a rift does not authorize this lower court's rebellion against the legal interpretation of its superior.

For these reasons CIGNA fails to convince the court that it should ignore the clear dictates of *Elston.* Therefore this court finds that it does not possess diversity jurisdiction over this case.

II. *"Separate and Independent" Jurisdiction Under 28 U.S.C. § 1441(c)*

■ CIGNA argues in the alternative that, even if this court chooses to follow *Elston,* it should still adjudicate the present case under 28 U.S.C. § 1441(c).[6] CIGNA argues that section 1441(c) applies to this case because NECOR's "claim or controversy" would be removable if sued upon alone, and because NECOR's claim is "separate and independent" from NECOMI's. Thus, CIGNA argues, this court should allow section 1441(c) removal of the entire lawsuit.[7]

■ As CIGNA's motion indicates, the threshold inquiry in a section 1441(c) motion is whether a "claim or cause of action, which would be removable if sued upon alone" exists. As in all matters relating to section 1441(c) disputes, CIGNA as movant carries the burden of proof. *Voors v. National Women's Health Org., Inc.,* 611 F.Supp. 203, 205 (N.D.Ill.1985). Further, as one of the cases cited by CIGNA makes

clear, "[a] defendant seeking removal must strictly comply with all the statutory requirements, and where there is doubt as to whether the requirements have been satisfied, the case should be remanded." *Ortiz v. General Motors Acceptance Corp.,* 583 F.Supp. 526, 529 (N.D.Ill.1984).

■ In order to prevail under section 1441(c) CIGNA must initially demonstrate that its suit with NECOR is "removable if sued upon alone." In other words CIGNA must show that this suit could have originally been brought in this court. *Grubbs v. General Electric Credit Corp.,* 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972). This showing requires, among other things, that the jurisdictional requirements of 28 U.S.C. § 1332(a) have been met. As that statute makes plain, for this court to have had original jurisdiction NECOR's claim must involve at least $10,-000.00. Although the complaint states a claim for $125,000,000.00, CIGNA has not alleged that those damages claimed from it by NECOR alone equal the jurisdictional amount. Thus doubt exists regarding the removal of this case under section 1441(c). Under *Ortiz,* the court must resolve this doubt against CIGNA, and hold that removal is improper due to an insufficient amount in controversy. Therefore this court must necessarily grant plaintiff's motion to remand.

Even assuming, *arguendo,* that CIGNA had demonstrated the existence of original jurisdiction over the NECOR suit, CIGNA would next have been required to show

---

**5.** This would seem to be the case, since *Navarro* informs us that the Supreme Court "never has analogized express trusts to business entities for purposes of diversity jurisdiction." *Navarro,* 446 U.S. at 463 n. 10, 100 S.Ct. at 1783 n. 10.

**6.** 28 U.S.C. § 1441(c) provides:

Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

**7.** CIGNA incorrectly claims that section 1441(c) allows the exercise of "pendent" jurisdiction over the NECOMI claim. Pendent jurisdiction is appropriate only in the presence of a claim that arises under federal law. *Aldinger v. Howard,* 427 U.S. 1, 8–9, 96 S.Ct. 2413, 2417–2418, 49 L.Ed.2d 276 (1976). In contrast, section 1441(c) was intended to apply to situations where no such claim exists. *Thomas v. Shelton,* 740 F.2d 478, 483–84 (7th Cir.1984). Even were a situation involving pendent jurisdiction to come within the purview of section 1441(c), the Seventh Circuit would probably regard the very "pendency" of the claims to preclude a finding that they were "separate and independent" under section 1441(c). *See Bernstein v. Lind–Waldock & Co.,* 738 F.2d 179, 183 (7th Cir.1984).

that that suit was "a claim or cause of action ... separate and independent" from the NECOMI–CIGNA suit. If this court had so determined, then the entire case would have been removable.

Both parties note that the leading case concerning section 1441(c) removal is *American Fire & Casualty Company v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). In *Finn* the Supreme Court illuminated the meaning of section 1441(c)'s requirement that NECOR's suit constitute a "separate and independent claim or cause of action" from NECOMI's claim. Justice Reed, writing for the Court, examined earlier decisions which defined "claim or cause of action." He concluded by quoting from the Court's decision in *Baltimore Steamship Corporation v. Phillips*, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069 (1927) that " '[a] cause of action does not consist of facts, but of the unlawful violation of a right which the facts show.' " *Finn*, 341 U.S. at 13, 71 S.Ct. at 540 (quoting *Baltimore S.S.*, 274 U.S. at 321, 47 S.Ct. at 602). The *Finn* Court considered section 1441(c)'s "separate and independent" language to require an almost "complete dissociation between the federally cognizable proceedings and those cognizable only in state courts." *Finn*, 341 U.S. at 12, 71 S.Ct. at 539. The Court thus held that "where there is a single wrong to plaintiff ... arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under section 1441(c)." Hence, removal is impossible if the NECOR and NECOMI claims constitute a "single wrong" under *Finn*.

*Finn*'s "single wrong" test has precipitated conflicting opinions where, as here, multiple plaintiffs join in a suit against a single defendant.[8] Both CIGNA and the New Energies have been more than helpful in setting forth their understandings of the "single wrong" test as applied to the situation at bar.[9] Not surprisingly, their views are as opposed as the results they desire. The New Energies contend that a "single wrong" occurs when the defendant engages in one act, or homogenous course of conduct, that violates rights held by the plaintiffs. Plaintiffs contend that, therefore, a "single wrong" exists in this case, since CIGNA engaged in a single act (namely refusing to pay the New Energies' claims against the insurance policy) which violated their rights and produced the instant litigation.

In contrast, CIGNA asserts that "the proper question is whether each plaintiff has suffered an unlawful violation of a right constituting a single wrong, not whether a defendant or defendants has committed a single wrong." In other words, CIGNA asserts that a "single wrong" is present when plaintiffs sue under rights which are so "joint," or intermingled, that their violation may be called a "single wrong." As a result, argues CIGNA, the NECOR and NECOMI claims do not involve a "single wrong" since each plaintiff claims under an individually-held right.

This court rejects CIGNA's characterization of *Finn*'s "single wrong" test. In employing that test, one must first define "cause of action" under section 1441(c), since the "single wrong" test determines *when* "causes of action" are *not* separate and independent. In *Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), the Supreme Court examined the question

---

8. See 14A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3724, pp. 386–87, nn. 54 & 55 (1985). It is not difficult to locate the source of this conflict. Section 1441(c) requires that two or more lawsuits be "separate and independent", and yet that they be so intimately connected that it would be most efficient for one forum to hear both. Roughly put, section 1441(c) requires that two or more suits be so unalike as to be similar. In this sense, section 1441(c) is the statutory equivalent of an M.C. Escher painting.

9. The parties have filed seven lengthy documents in this court in the form of memoranda of law, appendices, briefs and citations to supplemental authority.

Unfortunately, however, some of these documents were marred by an unseemly argument. At one point CIGNA chose to muddy the waters of this dispute by attacks on plaintiffs' motives. This court is content to remain in the realm of legal argument, and disapproves of such schoolyard bickering.

of what constitutes a single cause of action:

> The [complaint] alleges ... [defendant's] ... violation of a single right, namely, the right to protection of the copyrighted play. *And it is this violation which constitutes the cause of action.* Indeed, the claims of infringement and unfair competition so *precisely rest upon identical facts* as to be little more than the equivalent of different epithets to characterize the same group of circumstances. The primary relief sought is an injunction to put an end to *an essentially single wrong,* however differently characterized, not to enjoin distinct wrongs constituting the basis for independent causes of action.

*Id.* at 246, 53 S.Ct. at 590 (emphasis added). Similar language has been used in other contexts concerning the definition of "cause of action." In *Backus Plywood Corporation v. Commercial Decal, Inc.,* 317 F.2d 339 (2d Cir.1963), *cert. denied,* 375 U.S. 879, 84 S.Ct. 146, 11 L.Ed.2d 110 (1963), the Second Circuit addressed itself to the meaning of this phrase within Federal Rule of Civil Procedure 54(b), which allows appeals of summary judgments that involve more than one "cause of action." Plaintiff's complaint stated three "causes of action," two in contract and one in tort. The District Court granted summary judgment as to the contract action, and certified that its decision was immediately appealable. The Second Circuit ruled that only a single "cause of action" was presented by the complaint:

> [T]he three "causes of action" in the complaint presented merely three different theories of recovery ... *[A]ll of the facts on which plaintiff relies constitute but a single transaction* composed of a closely related series of occurrences....

*Id.* at 341 (quoting *Schwartz v. Eaton,* 264 F.2d 195, 196 (2d Cir.1959)) (emphasis added). Thus the *Backus* Court held rule 54(b) was inapplicable. *Id.*

Consequently, a "cause of action" is, as the words imply, a *cause* of the action. The concept centers around the transaction without which the litigation could not occur. This emphasis has enjoyed catholic application. *See, e.g., Baltimore S.S.,* 274 U.S. at 321, 47 S.Ct. at 602 (finding a single cause of action where one set of facts undergird two separate tort suits; second suit barred by *res judicata* ), *Mack Trucks, Inc. v. Arrow Aluminum Castings Co.,* 510 F.2d 1029 (5th Cir.1975) (finding a single cause of action present where contract and tort claims brought against defendant for negligent manufacture of truck component; case within state long-arm statute), *Charles Dowd Box Co. v. Firemen's Fund Ins. Co.,* 303 F.2d 57 (1st Cir.1962) (finding plaintiffs' suits against thirty-nine insurance companies stemming from defendants' refusal to pay claims resulting from two fires a "single wrong" under section 1441[c] ), *Belasco v. W.K.P. Wilson & Sons, Inc.,* 833 F.2d 277 (11th Cir.1987) (finding plaintiffs' suits against insurance company and broker for medical expenses alleging bad faith and fraud a "single wrong" under section 1441[c] ).

It is true that few of these cases involved facts similar to this case, in which two plaintiffs sue a single defendant on individually asserted legal theories. However, a number of federal courts have applied the same definition of "cause of action" to suits involving multiple plaintiffs and a single defendant for the purposes of a section 1441(c) motion. One of the most illustrative of these cases is *Vidmar Buick Company v. General Motors Corporation,* 624 F.Supp. 704 (N.D.Ill.1985). In that case Vidmar and two other plaintiffs sued defendant for the violation of a single Illinois law. In holding that removal would be improper under section 1441(c) the court stated:

> In this case, the three plaintiff automobile dealers allege that GM violated the Motor Vehicle Franchise Act ... when GM established another Buick dealership in the plaintiffs' market area. *The plaintiffs allege that one happening—* the establishment of an additional Buick franchise in the Bolingbrook, Illinois, area—*adversely affected all three plaintiffs.* Following *Finn,* the court finds that Vidmar's claim or cause of action in

the initial complaint is not separate from those of co-plaintiffs....

*Id.* at 705 (emphasis added). This analysis of the "single wrong" test in a multiple plaintiff/single defendant case may be found in other decisions. *See, e.g., National Org. for Women v. Mutual of Omaha Ins. Co.,* 612 F.Supp. 100 (D.D.C.1985) (holding that where multiple suits against a single defendant resulted from one course of conduct, causes not "separate and independent"), *Visual Sciences, Inc. v. Matsushita Elec. Indus. Co., Ltd.,* 528 F.Supp. 1000 (E.D.N.Y.1981) (stating that where single course of conduct injured distinct legal rights of plaintiffs, causes not "separate and independent" for section 1441[c] ).

Other courts have reached the opposite result, and held that multiple plaintiffs/single defendant lawsuits are "separate and independent" under section 1441(c).[10] Such a "theory-based" analysis of the section 1441(c) "separate and independent" inquiry, however, lacks persuasive force.

The argument that, under the "single injury" concept of cause of action, a suit brought by multiple plaintiffs would consist of as many causes of action as there are plaintiffs seems insupportable: if all the plaintiffs had been injured by the same act or group of acts ... there would be a common occurrence or transaction binding the component parts of the litigation. In the case of multiple defendants acts are connected by their common result, while in the case of multiple plaintiffs, separate results are related by their single source.

Note, *Removal Under Section 1441(c) of the Judicial Code,* 52 Colum.L.Rev. 101, 106–07 (1952). As this excerpt suggests, CIGNA's "theory-based" analysis departs from *Finn's* conception of a "cause of action." *Finn* envisions a "cause of action" to possess the *substance* of a single unlawful transaction clothed in the *accidents* of individually-asserted legal arguments. In other words *Finn, Hurn,* and other cited cases imagine a "cause of action" as a transaction which *per se* violates rights, in turn triggering the individual legal arguments used to appeal for redress of those rights. Because of this definition, this court cannot accept CIGNA's proffered description of the "separate and independent" analysis as focusing on the legal arguments used by multiple plaintiffs. This analysis is inconsistent with *Finn,* for it ignores the threshold question by missing the true definition of a "cause of action" under section 1441(c). A number of courts interpreting section 1441(c) have reached the same conclusion, and followed *Finn's* "factual analysis" approach. *See, e.g., In re Romulus Community Schools,* 729 F.2d 431 (6th Cir.1984); *Burnett v. Eastman Kodak Co.,* 433 F.Supp. 514 (E.D. Tenn.1977); *Schwartz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 424 F.Supp. 672 (N.D.Cal.1976); *Wilson v. New York Terminal Warehouse Co., Inc.,* 398 F.Supp. 1379 (M.D.Ala.1975); *Strange v. Arkansas–Oklahoma Gas Corp.,* 534 F.Supp. 138 (W.D.Ark.1981) (all focusing on the litigious nature of defendant's conduct to determine whether a "single wrong" is present).

Two cases clearly show that the Seventh Circuit also applies this "transactional" concept of a cause of action in analyzing section 1441(c) claims. *In P.P. Farmers Elevator Company v. Farmers Elevator Mutual Insurance Company,* 395 F.2d 546 (7th Cir.1968), the defendants had each issued a performance bond to plaintiff which covered plaintiff's manager. Plaintiff alleged that during the lives of the respective bonds the manager had defrauded plaintiff, and that defendants had failed to pay their obligations under the bond. The court held that plaintiff's actions against defendants were "separate and independent" from each other, and that consequently both defendants had to petition for removal of the entire case. *Id.* at 546.

In *Lewis v. Louisville & Nashville Railroad Company,* 758 F.2d 219 (7th Cir. 1985), Lewis alleged that the defendant railroad negligently injured him. He sought damages under state tort law and

---

**10.** *See, e.g., Northside Iron & Metal Co. v. Dobson & Johnson, Inc.,* 480 F.2d 798 (5th Cir.1973), *Jong v. General Motors Corp.,* 359 F.Supp. 223 (N.D.Cal.1973).

Federal Employers' Liability Act. Lewis later amended his complaint to add a claim for intimidation. The railroad successfully petitioned under section 1441(c) for removal. *Id.* at 220. The Seventh Circuit stated that the intimidation claim was "separate and independent" under section 1441(c):

> The wrong that [plaintiff originally] alleged was the negligence of the railroad up to the date of his second injury. The intimidation count, by contrast, concerns an alleged intentional tort committed by the Railroad after he filed the first FELA claim. Since the intimidation claim alleged a different wrong and involved a different set of facts than the FELA claims, the intimidation claims was a "separate and independent" claim for purposes of section 1441(c).

*Id.* at 221 (emphasis added). Consequently, the Seventh Circuit upheld removal. *Id.*

These cases show that the Seventh Circuit's "single wrong" test focuses on the character of a defendant's litigious conduct. In *Lewis* the court based its section 1441(c) determination on whether plaintiff claimed various rights as the result of a separate acts by defendant, not on whether plaintiff's legal arguments were somehow "fused" into a single claim. The same may be said of *P.P. Farmers*, where each defendant injured plaintiff by discrete transactions. The Seventh Circuit found removal proper in both cases, not because the plaintiffs asserted "individual" rights, but because in both cases the defendants had engaged in factually-distinct courses of conduct which "awoke" the various legal claims involved. The same section 1441(c)

emphasis may be found in numerous district court opinions in the Seventh Circuit.[11]

■ Furthermore, not only does CIGNA's proposed "single wrong" test conflict with Seventh Circuit precedent, it conflicts with section 1441(c)'s basic policy. As the *Finn* court held, one of the chief purposes of that statute is "to limit removal from state courts." *Finn*, 341 U.S. at 9–10, 71 S.Ct. at 538. "The right of removal is a congressionally imposed infringement on a state court's power to determine controversies, and, therefore, the removal statutes must be strictly construed." 611 F.Supp. 203, 205 (N.D.Ind.1985) (citing *Shamrock Oil & Gas Co. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941)). A section 1441(c) removal analysis which focuses on the factual nexus giving rise to the litigation not only comports with *Finn*'s concept of a "cause of action," but also limits removal far more than an analysis which would permit removal whenever one diverse, and one or more non-diverse plaintiffs sue in state court.[12]

Despite all of the above, CIGNA still claims that its "theory-based" analysis of the "single wrong" test is followed by the Seventh Circuit. It cites *People ex rel. Bowman v. Home Federal Savings & Loan Association*, 521 F.2d 704 (7th Cir. 1975) as authority for its argument, and further cites *Ortiz v. General Motors Acceptance Corporation*, 583 F.Supp. 526 (N.D.Ill.1984) and *Wilson v. Intercollegiate (Big Ten) Conference Athletic Association*, 513 F.Supp. 1062 (C.D.Ill.1981), *rev'd*, *Wilson v. Intercollegiate (Big Ten) Con-*

---

**11.** *See, e.g., Voors v. National Women's Health Org., Inc.*, 611 F.Supp. 203, 209 (N.D.Ind.1985) (single wrong where plaintiffs allege injury "by one happening which occurred as a result of all the defendants"), *Vidmar Buick Co. v. General Motors Corp.*, 624 F.Supp. 704, 705 (N.D.Ill. 1985) (single wrong where plaintiffs allege injury as the result of one act of defendant), *Chappell v. SCA Servs., Inc.*, 540 F.Supp. 1087, 1094 (C.D.Ill.1982) (single wrong where all plaintiffs allege injury as a result of defendants' negligent operation of toxic waste dump), *Sawyer v. Federal Barge Lines, Inc.*, 577 F.Supp. 37, 37 (S.D.Ill. 1982) (plaintiff's legally-distinct claims a single wrong, since all resulted from a single negligent transaction), *Armstrong v. Monex Int'l, Ltd.*, 413 F.Supp. 567, 568–69 (N.D.Ill.1976) (single wrong

where plaintiff's different legal claims under Securities Exchange Acts centered on one set of actions by defendant), *Fugard v. Thierry*, 265 F.Supp. 743, 747–48 (N.D.Ill.1967) (right to remove not revived where complaint does not alter its descriptions of defendant's actions).

**12.** CIGNA's proposed test is nowhere more problematic than in the context of a class action. In such a case a vast number of plaintiffs, many of whom are never known to the court, sue collectively through a few named plaintiffs. Under CIGNA's test it would be difficult to allow the removal of such actions, since a class action presents the paradigm of CIGNA's "theory-based" single wrong.

*ference Athletic Association,* 668 F.2d 962 (7th Cir.1982), *cert. denied,* 459 U.S. 831, 103 S.Ct. 70, 74 L.Ed.2d 70 (1982)[13] as additional authority for its view. However an examination of these cases reveals that they do not support CIGNA's contention. Indeed, two of the cases do not even reach the issue now before the court.

*Bowman* did indeed pronounce on the validity of removal. That case was a class action brought by the Illinois Attorney General against Reserve Savings and Loan and Home Federal Savings and Loan associations for discriminatory loan practices. Defendant Home Federal successfully removed the case under section 1441(c) to district court, where its motion to dismiss was granted. Plaintiff appealed, claiming that its case against Reserve Federal ought to have been remanded. In ruling on plaintiff's contention, the Seventh Circuit stated:

> [T]he plaintiff did not make a motion in the district court to remand the Reserve claim. Rather, the plaintiff's motion to remand was concerned solely with the removal of the Home Federal claim. In this situation, the plaintiff is deemed to have waived his objections to the removal of the Reserve claim.

*Bowman,* 521 F.2d at 707. The *Bowman* court went on to note, in dictum,[14] that *assuming* a preserved removal objection, the district court had discretion to hear the entire action under section 1441(c). *Bowman* provides no authority for CIGNA's contention. *Bowman*'s only holding was that plaintiff had no appeal due to his failure to preserve an objection to removal. Even had *Bowman* dealt with section 1441(c)'s "separate and independent" stricture, it is clear that *Bowman* involved a readily distinguishable fact pattern similar to *P.P. Farmers;* that is, in *Bowman* the defendants allegedly engaged in discrete transactions.

*Ortiz* was a class action against General Motors Acceptance Corporation and Motors Insurance Corporation, alleging violations of Illinois law. Defendants sought to remove the action to federal court; plaintiffs responded by arguing that the removal motion was untimely and, in the alternative, that the district court lacked subject matter jurisdiction. *Ortiz,* 583 F.Supp. at 528. The *Ortiz* court noted that defendants ordinarily had thirty days after being served in which to file a removal motion. The court examined an exception to this rule under section 1441(c), in which "a later-served defendant may properly file a removal petition within 30 days of *his* service, without regard to the fact that an earlier defendant was served more than 30 days prior to removal." *Id.* at 530 (emphasis original). The court then noted that a threshold to any section 1441(c) analysis of the claims against the defendants was a showing that the latter-served defendant's suit was "removable if sued upon alone." The *Ortiz* court held that, although two of plaintiff's claims were *putatively* "separate and independent" under section 1441(c), defendants had failed to show that the claim against the latter-served defendant satisfied the jurisdictional amount. Therefore, the court reasoned, defendants were barred from removing the action. *Id.* at 530. It is patently obvious to this court that *Ortiz,* although cited by CIGNA, has absolutely nothing to do with the point in issue, since its decision ended before a section 1441(c) "separate and independent" analysis could begin.

Finally, CIGNA cites *Wilson v. Intercollegiate (Big Ten) Conference Athletic Association* to support its argument that the Seventh Circuit follows CIGNA's proffered "theory-based" section 1441(c) analysis. In that case Wilson sued several defendants, alleging violations of his equal protection and procedural due process rights resulting from defendants' failure to fairly promul-

---

**13.** This court notes with displeasure that CIGNA failed to cite *Wilson* as being overruled. Reporting subsequent case history is one of the most elementary tasks of legal writing. There is no acceptable excuse for failing to mention a subsequent, overruling opinion.

**14.** This court also notes that CIGNA failed to distinguish this language as unessential to the *Bowman* court's decision.

gate and apply eligibility rules for intercollegiate athletics. Wilson originally sought an injunction to allow him to participate in sports. Defendants waived removal by failing to file within the thirty-day deadline. Some time later, plaintiff filed an amended complaint for damages that dropped every defendant except the Big Ten Association. That complaint alleged additional violations of the first amendment, article IV of the United States Constitution, various civil rights and conspiracy laws, gender discrimination, and violations of the Illinois antitrust statute. *Wilson,* 513 F.Supp. 1063–64. The district court held that the new complaint "revived" defendant's right of removal by virtue of its fundamentally-altered legal nature, which required new and additional proof and which sought legal as opposed to equitable damages. The court held that, for the same reasons, the claims were "separate and independent" under section 1441(c). *Id.* at 1065.

Although not noted by CIGNA, the Seventh Circuit reversed the district court, holding that strong federal policy concerns weighed in favor of deterring any possible future plaintiffs from "deliberately hold[ing] back [their] strong federal cards hoping to induce the defendant to waive his right to remove the original complaint." *Wilson,* 668 F.2d 962, 966 (7th Cir.1982). The Seventh Circuit went on to state that the case should be remanded, holding that the case had not been so radically altered by plaintiff's amendation, *which complained of the same conduct,* as to constitute unfair surprise to defendant. *Id.*

Thus CIGNA's final authority is unpersuasive for the simple fact that it is not law. Furthermore, the Seventh Circuit's *Wilson* opinion dealt with an unusual situation not presented by this case. The New Energies have not filed a new complaint under allegedly unfair circumstances. Indeed, it should be noted that when *Wilson (II)* touched on section 1441(c), the Court of Appeals stated that it viewed the new claims unremovable because they represented the same transaction. If anything, *Wilson* emphasizes *P.P. Farmers'* and *Lewis'* insistence on the "transactional"

definition of a "single wrong" urged by the plaintiffs in the case at bar.

■ After this discussion of CIGNA's cited authority a proper evaluation of CIGNA's 1441(c) removal motion becomes simple. For the purposes of section 1441(c) we must resolve the issue of removability on the basis of the New Energies' allegations. *Bernstein v. Lind–Waldock & Co.,* 738 F.2d 179, 183 (7th Cir.1984). The New Energies each allege violations of their rights to payment under the insurance policy resulting from a CIGNA's *single* refusal to pay either of them. Under the cases cited above, the instant case lacks the almost "complete dissociation between the federally cognizable proceedings" of NECOR v. CIGNA "and those cognizable only in state courts," namely, NECOMI v. CIGNA. *Finn,* 341 U.S. at 12, 71 S.Ct. at 539. The instant lawsuit concerns a "single wrong to plaintiff … arising from an interlocked series of transactions," and as a result "there is no separate and independent series of transactions," and, therefore, "there is no separate and independent claim or cause of action under section 1441(c)." *Id.*

### Conclusion

*Elston* excludes this case from the diversity jurisdiction of this court. Furthermore, due to CIGNA's failure to satisfy the threshold element of a successful section 1441(c) removal action by demonstrating an adequate amount in controversy between it and NECOR, this court must grant the plaintiffs' motion to remand. Even had CIGNA satisfied the amount-in-controversy requirement, the claims against it by NECOR and NECOMI are not "separate and independent" under section 1441(c). Consequently, plaintiffs' motion to remand is GRANTED.